Filed 1/4/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KATHLEEN D. MCBRIDE, as Trustee, etc.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>BYRON C. SMITH et al.,<br><br>    Defendants and Respondents. | A147931<br><br>(Napa County<br>Super. Ct. No. 26-63368) |

## I.  INTRODUCTION

Kathleen McBride (McBride) sued Byron and Kalmia Smith (the Smiths) for violating McBride's rights with respect to a recorded easement over the Smiths' property. After sustaining demurrers to several versions of McBride's complaint, the last without leave to amend, the trial court entered judgment in favor of the Smiths. On appeal, we conclude that McBride stated causes of action for nuisance and prescriptive easement, and the trial court committed reversible error by sustaining demurrers as to those claims. In light of this conclusion, we need not address McBride's additional challenge to an order granting the Smiths' motion for attorney fees.

## II.  FACTUAL AND PROCEDURAL HISTORY

### A.  *Background*[1]

The underlying dispute pertains to adjoining parcels of real property in St. Helena, commonly known as 1664 and 1670 Spring Street (respectively referred to as

---

[1] The trial court took judicial notice of extensive documentary evidence, which is the source of our background summary.

1

1664 Spring and 1670 Spring). The southern border of 1664 Spring adjoins the northern border of 1670 Spring. Another relevant property, 1660 Spring, adjoins the eastern border of 1670 and part of 1664. An alley connecting to the public street runs east below the southern border of 1660 and 1670 Spring.

In 1993, Delores Daniels owned 1670 Spring, while Silvio Pelandini owned 1664 Spring. In March of that year, Daniels filed a complaint against Pelandini and all unknown persons to quiet title in, and reform her deed to include, two strips of land along opposite borders of her property at 1670 Spring: (1) a 15-foot-wide strip along the western border; and (2) a 12-foot wide strip along the eastern border. Daniels alleged this property had been inadvertently omitted from the legal description of her land and sought to reform her title based on principles of adverse possession. In June 1993, the trial court entered judgment quieting Daniels' title to both strips of land.

On September 8, 1993, Daniels granted Pelandini an easement running with the land over the 12-foot strip of land along the eastern border of 1670 Spring. The easement was described as "a secondary right-of-way over the existing roadway surface within the easement location, for the purpose of emergency ingress and egress . . . ." The recorded grant described the easement within metes and bounds and specified the following use: "Grantee or successors may only use the easement created hereby for the purpose of emergency or secondary ingress and egress to a single family residency and not as primary access. Grantee may not improve or expand their use of the easement beyond the boundaries of the existing roadway surface without the express written consent of Grantor, nor may Grantee cut or remove any trees or shrubbery within said easement except as necessary to keep said roadway clear for normal vehicular travel."

In 1998, the Smiths purchased 1670 Spring from the Daniels family. By 2004, the McBride family had acquired title to 1664 Spring, and Lindsey Vickers owned 1660 Spring.

In January 2004, the McBrides and Vickers executed an agreement granting the McBrides a "driveway easement" on property within the western border of 1660 Spring for "vehicular and pedestrian ingress, egress, and access . . . ." The agreement provided,

in part: "McBride's use of the Driveway Easement shall be exclusive, and Vickers shall not grant or assign to other private parties any ingress, egress, and access rights in the Driveway Easement Strip. Notwithstanding the preceding sentence, however, Vickers reserves the right to use the Driveway Easement Strip, so long as such use does not unreasonably interfere with McBride's use of the Driveway Easement for access to and from Parcel 23."

In July 2013, appellant Kathleen McBride became the sole owner of 1664 Spring, which she held in her trust. A legal description of the property incorporated into her grant deed includes the easement Daniels granted to Pelandini in October 1993, and the easement Vickers granted to McBride in 2004. In the present case, the parties use a variety of terms to describe these two easements. For clarity, and to the extent possible, we will refer to the easement that the McBrides obtained from Vickers as the Driveway Easement, and the easement that Pelandini obtained from Daniels as the Secondary Access Easement.

Several versions of McBride's complaint incorporated maps of unknown origin and authenticity. These documents depict the Secondary Access Easement and Driveway Easement as parallel, contiguous strips of land bordering the property line between 1660 and 1670 Spring, running between the south alley and southern border of 1664 Spring.

### B. McBride's Complaint

In her January 2014 complaint, McBride alleged the following material facts: McBride's property at 1664 Spring and the Smiths' property at 1670 Spring share a driveway. For the past nine years, McBride and/or her predecessors in interest have used the driveway, which is at least partially covered by a recorded right of way, for full ingress and egress to 1664 Spring as well as for emergency purposes. Recently, the Smiths "erected permanent fixtures in said driveway to impede [McBride] and block her access to her property." McBride gave the Smiths written notice of her rights and requested they remove the impediments, but they "proceeded to maintain a pole with a chain, thereby preventing access to [McBride] over the subject driveway."

3

McBride incorporated these allegations into causes of action for (1) trespass, claiming unauthorized interference with McBride's "exclusive possession" of the disputed property; (2) forcible detainer, by "physically prohibiting [McBride] from using and occupying her land"; (3) prescriptive easement, resulting from McBride's open and notorious use of the of the driveway without the consent or permission of the Smiths; and (4) nuisance, resulting from the Smiths' interference with McBride's use, enjoyment, and free passage across "her roadway and easement areas."

The Smiths filed general and special demurrers to the complaint, arguing, among other things, that McBride did not and could not allege facts to establish her right to *exclusive* possession of a *shared* driveway; McBride used the driveway with the Smiths' express permission; and the allegations and judicially noticeable facts showed that the Smiths did not prevent McBride from accessing her property.

### C. The First Amended Complaint (1-AC)

In June 2014, before the Smiths' demurrers were heard, McBride filed her 1-AC. In that pleading, McBride disclosed that she owned 1660 Spring as well as 1664 Spring. McBride further alleged that she has the right to the following recorded easements: (1) An alley easement benefiting 1660 Spring "provides sole access from Spring Street to Plaintiffs' property located at 1660 Spring Street." (2) A separate easement partially on the same alley benefits 1664 Spring. This easement (hereafter the Western Border Easement) runs along the southern boundary of the Smith property, and then turns and runs within the western border of 1670 Spring providing "western Alley access" to 1664 Spring. (3) A "secondary access easement," which also benefits 1664 Spring (i.e., the Secondary Access Easement described above), runs "directly on the front portion of [the Smiths'] parcel and terminates at the southern corner of [McBride's] property." (4) An "access easement" benefiting 1664 Spring, (i.e., the Driveway Easement described above), is contiguous to the Secondary Access Easement and "runs parallel in front of the same."

McBride alleged that, for several years, she and her predecessors had openly and under claim of right used the Secondary Access Easement for primary access to

4

1664 Spring until the Smiths erected a "chain, pole and wood dividers" in the Secondary Access Easement that prevented McBride "from reasonably accessing 1664 Spring Street." Also, the Smiths allegedly erected "fences, landscaping and other permanent obstructions" in McBride's Western Border Easement. Thus, according to the 1-AC, to reach her property at 1664 Spring, McBride was "forced to either remove a pole and chain every time," or trespass on 1660 Spring.

Although McBride admitted that the Driveway Easement also benefits 1664 Spring, her allegations about its specific location and actual function were confusing and possibly contradictory. She expressly admitted that the Driveway Easement "provides access from Spring Street to Plaintiff's property located at 1664 Spring Street." But she also alleged that the Driveway Easement touches only a corner of 1664 Spring and that without using part of the Secondary Access Easement, she "would have no way to access 1664 Spring Street without trespassing on 1660 Spring Street." McBride's allegation that she would have to trespass on 1660 Spring was also inconsistent with other allegations acknowledging that she not only had a Driveway Easement over that property, but that she herself owned 1660 Spring.

On August 26, 2014, the trial court sustained demurrers to the 1-AC. The court found that the trespass claim was uncertain because McBride was asserting rights in recorded easements that were not adequately described. Furthermore, McBride did not allege facts to establish the elements of a forcible detainer (Code Civ. Proc., § 1159). Nor did she state a claim for prescriptive easement because (1) her alleged use without consent was contradicted by allegations that the Secondary Access Easement was express and recorded, and (2) judicially noticed evidence produced by the Smiths showed that the Driveway Easement afforded primary access to 1664 Spring. Finally, McBride's nuisance claim was premised on an alleged lack of access to the Secondary Access Easement, but she admitted she could access that easement by removing the pole.

5

### D. *Second Amended Complaint (2-AC)*

In her 2-AC, filed in September 2014, McBride supplemented her factual allegations in an effort to state claims for trespass, forcible detainer, nuisance, and prescriptive easement.

McBride alleged that she could not access 1664 Spring "without entering" the Secondary Access Easement for the following reason: In order to get to 1664 Spring from the public street, McBride "must" turn onto an alley that runs perpendicular to the street, and then turn right onto another alley, which is covered in gravel and appears to be one road, but which is actually the Secondary Access Easement on one side and the Driveway Easement on the other. However, the Driveway Easement "terminates prior to 1664." Thus, "there is no way to gain access to 1664" via this alley "without entering" the Secondary Access Easement.

McBride also supplied additional facts allegedly showing that the Smiths had "physically prohibited" her from using the Secondary Access Easement to access 1664 Spring: "Defendants have erected a chain, pole and wood dividers that prevents Plaintiff from reasonably accessing 1664 Spring Street. The pole is directly placed where the single entry point from the southern Alley access for 1664 ends. Accordingly, Plaintiff either has to remove the pole to access her property or cross 1660 Spring Street. The pole and chain are bolted into the ground. In order to remove same, one would have to unscrew the base of the pole (a large eight foot tall solid post, which would be virtually impossible for a person of Plaintiff's stature to lift) and physically move it out of the way in order to gain access. Only a person with the proper tools and requisite strength could remove the large pole and chain. The pole and chain as they exist are an unreasonable obstruction to Plaintiff's access."

McBride alleged that these circumstances also showed that her use of the Secondary Access Easement was prescriptive, notwithstanding her express right to use it. Her pleaded theory was that the fact that the Driveway Easement did not stretch all the way to 1664 Spring showed that McBride had to use the Secondary Access Easement as her primary means of accessing her property: "As the attached map set forth in Exhibit A

6

shows, the southern Alley access for 1664 terminates prior to 1664 Spring Street. In other words, there is no way to gain access to 1664 Spring Street from the southern Alley access for 1664 without entering the secondary access easement. Accordingly, this is how Plaintiff and her predecessors have access[ed] 1664 Spring Street continuously for the past five (5) years."

The map attached as an exhibit to the 2-AC appears to have been machine generated, but contains handwritten notations as well. The document is titled as a "Proposed Configuration" of a "Lot Line Adjustment," and contains no information about who drafted it for McBride or when it was prepared. The proposed configuration redrew the property lines of 1660 and 1664 Spring so that a piece of driveway originally on the 1664 Spring property would become part of the 1660 Spring property. Apparently, the map was intended to support McBride's allegation that the Driveway Easement did not reach all the way to 1664 Spring by showing that McBride redrew the property lines so that the entire driveway—including the part that previously ran onto 1664 Spring—was now part of 1660 Spring. In their demurrers to the 2-AC, the Smiths argued that McBride's map exhibit was evidence that she had access to 1664 Spring via 1660 Spring, which she also owned.

In February 2015, the trial court sustained demurrers to the 2-AC. The demurrers to the forcible detainer claim was sustained without leave to amend because McBride failed to allege facts to establish that the Smiths entered her property, took possession of it, and continued to "detain possession" of it. The court granted McBride leave to amend her other claims to address the following flaws. First, the causes of action for trespass and nuisance on the Secondary Access Easement were uncertain because McBride failed to adequately allege facts, such as the location of the pole and chain within the easement, in order to demonstrate that there was an actual obstruction of use and/or access. Second, McBride's new allegations that she also had rights in a Western Border Easement on the Smiths' property appeared to be barred by res judicata in light of a judicially noticed 1993 judgment quieting title to that property in favor of Delores Daniels, the Smiths' predecessor in interest. Third, the cause of action for a prescriptive easement was

7

premised on a factual allegation that the Driveway Easement did not actually provide access to 1664 Spring, but the map attached to the 2-AC showed that it did. Furthermore, the court found, McBride could not obtain prescriptive rights to land she had a right to use.

### E. *Third Amended Complaint (3-AC)*

In February 2015, McBride filed a 3-AC, which purported to state eight separate causes of action. McBride realleged the same four claims from her prior pleadings, although she relabeled her forcible detainer claim as a cause of action for forcible entry. Also, she added causes of action to quiet her title to (1) a right of way over the Western Border Easement; (2) an unrestricted right of way over the part of the road covered by the Secondary Access Easement; (3) an easement by necessity over the part of the road covered by the Secondary Access Easement; and (4) an equitable easement over the part of the road covered by the Secondary Access Easement. McBride referred to these interests as "rights of way" rather than easements, and alleged that each of these rights was depicted on a color-coded map attached as Exhibit F to the 3-AC.[2]

According to the 3-AC allegations, "[u]ntil recently," the Driveway Easement and Secondary Access Easement "formed one single gravel alley that was only divided on paper," and each of McBride's predecessors used the entire alley for "full ingress and egress to Plaintiff's property." McBride alleged that either (1) the recorded deeds do not limit her use of the entire alley; or "alternative[ly]" (2) McBride or her predecessors openly and under claim of right used the Secondary Access Easement for primary access purposes for at least five years before the current dispute arose in 2014.

McBride also alleged that she is currently "physically prohibited from entering her property by using either" her Driveway Easement, Secondary Access Easement, or

---

[2] The appellate record does not include a document labeled as Exhibit F, but a black and white copy of a map appears to be attached to the 3-AC. Prepared by Albion Surveys and dated February 20, 2015, the printed map is labeled as a "PLAT" of McBride's property. The map also contains handwritten annotations that are difficult to decipher.

Western Border Easement, for the following reasons: The Smiths installed "red painted 2x4 boards down the middle" of the alley, and "erected a heavy chain and large pole at the corner of Plaintiff's property." The pole and chain are bolted to the ground, and cannot be removed without tools and significant strength. Further, the "position of the pole and dividers" creates two impediments: (1) it "block[s]" McBride's access to and from the Driveway Easement; and (2) it "prevents" McBride from "accessing her property over" the Secondary Access Easement. Beyond that, the Smiths "have also erected fences, landscaping and other permanent obstructions which completely and wholly prevents" McBride from accessing her property over the Western Border Easement.

In a June 17, 2015 order, the superior court sustained, without leave to amend, McBride's forcible entry claim and new causes of action to quiet title to an easement by necessity and an equitable easement over the Smiths' property, finding that McBride had not alleged facts to satisfy the elements of these claims. The court also sustained demurrers without leave to amend to all of McBride's claims pertaining to the Western Border Easement, taking judicial notice of the judgment quieting title to that strip of property in the Smiths' predecessors in interest.

Regarding the Secondary Access Easement, the court found that McBride failed to state claims for trespass or nuisance because her allegation that the Smiths had "completely and wholly" prevented her from accessing 1664 Spring was contradicted by allegations in her prior pleadings and by the map exhibit attached to her 3-AC, all of which indicated that the pole and boards were placed along the boundary line of the Smith property in a way that did not block the driveway that was on the 1660 Spring. The court granted McBride leave to amend these claims in light of two issues that were raised at the demurrer hearing. First, McBride's counsel stated that McBride had recently sold 1660 Spring, an occurrence that may have an impact on her use of that property to access 1664 Spring. Second, both counsel acknowledged the possibility that the chain attached to the pole may have "stretched across the 12 foot width of the 12' Secondary

9

Access Easement," but this was not "clear" from the 3-AC, which contained insufficient details about the actual location of the alleged obstructions.

The court also granted McBride leave to amend her prescriptive easement claim, finding that McBride's pleaded theory that her actual use of the Secondary Access Easement was a violation of the express easement and thus adverse to the rights of the Smiths was not supported by allegations of material fact.

### F. The Fourth Amended Complaint (4-AC)

In July 2015, McBride filed her 4-AC, which streamlined her claims against the Smiths. McBride alleged she is the beneficiary of two recorded easements that run parallel to each other: the Secondary Access Easement encumbering the Smiths' property; and the Driveway Easement located on property "owned by 1660 Spring Street," which "remains in full force and provides access to the alley that connects both easements to Spring Street."[3]

McBride alleged that the following actions by the Smiths gave rise to a dispute about the Secondary Access Easement: First, the Smiths constructed "wood dividers" that stretch along the "entire length" of the easement. The dividers are red 2x4 boards that "protrude out of the ground." Second, the Smiths erected a "heavy chain and large pole" at the "end" of the easement, with the chain extending "the entire width" of the easement. Third, the pole was bolted to the ground and could not be removed without special tools or a high amount of strength. Fourth, "[b]oth the pole and chain as they exist now obstruct Plaintiff's access. Even if the chain was removed, the pole would still block Plaintiff's access." Finally, on information and belief, McBride alleged that the Smiths intended to build a fence along the length of the Secondary Access Easement so it could be used as a patio. As support for this claim, McBride alleged that the Smiths had

---

[3] The trial court took judicial notice of a December 2014 grant deed conveying 1660 Spring to Richard and Mary Walloch. Interestingly, the legal description of the property attached to the deed does not reflect that it was encumbered by the Driveway Easement.

"recently" installed "footings" in the form of buried pipes along the length of the easement.

McBride alleged that these "encroachments" were depicted in a "Plot Map" attached as an exhibit to the 4-AC. This plot map appears to be a handwritten schematic of the properties at 1660, 1664 and 1670 Spring, depicting the Driveway Easement and Secondary Access Easement, and using dots and dashes to locate a post, buried pipes, and wood dividers in the easement area. McBride also attached a photograph to the 4-AC that allegedly depicted the footings and other encroachments in the Secondary Access Easement.[4]

McBride alleged that before encroachments were installed, she and her predecessors used the Secondary Access Easement for "primary access purposes" for at least five years, openly, notoriously, under claim of right, and on a daily basis. However, "[a]s of this date," she cannot use the easement "because of the encroachments." Furthermore, the encroachments also obstruct a "hammer head fire turnaround, posing a significant safety concern."

McBride incorporated these factual allegations into causes of action for trespass, nuisance, and prescriptive easement. She alleged that installing encroachments in her Secondary Access Easement constituted a trespass and a nuisance because they prevented her from using the easement, causing her damage. She further alleged that she acquired prescriptive rights to use the Secondary Access Easement for "primary access" because she and her predecessors had used it for that purpose on a daily basis for five years.

On September 9, 2015, the trial court sustained demurrers to the 4-AC without leave to amend. The court analyzed the trespass and nuisance claims together because

---

[4] The copy of this photograph in the appellate record does not provide a clear picture of anything. McBride has provided this court with a color copy of what appears to be the same photograph. That document shows a stretch of a road, divided lengthwise in the sense that one side is paved and the other is gravel. A pole or post appears on one interior corner of the gravel side of the road with a chain extending to the right. Red tiles flush with the adjacent pavement sit in the gravel along the interior side of that half of the road.

they were based on the same factual allegations. The court observed that it granted leave to amend the 3-AC so McBride could provide clarification about her Driveway Easement, "the area it covers, and the access it provides." However, the 4-AC did not address the Driveway Easement at all. Nor did McBride allege facts to establish that the Smiths' conduct prevented her from using the Secondary Access Easement to access 1664 Spring. McBride alleged that there was a "pole, chain and wood dividers that completely bar her from accessing her property over the 12' Secondary Access Easement." However, these allegations were contradicted by McBride's exhibits, which showed that the pole was located on the edge of the Secondary Access Easement, and the wood pilings did not protrude from the ground, but simply marked a boundary, and thus did not bar McBride from accessing her property. The court noted that McBride added an allegation that there was a chain across the width of the Secondary Access Easement. The inclusion of this allegation in a verified pleading concerned the court in light of an undisputed representation by the Smiths' counsel that the chain had been removed before the 4-AC was filed. In any event, the court found this new allegation was insufficient because McBride did not allege that the chain was locked, and the recorded grant did not require that the Secondary Access Easement be open at all times.

As to the prescriptive easement claim, the court stated that it previously granted leave to amend because the allegation claiming "primary use" of the easement was too vague to establish a violation of the grant, i.e., a use that was adverse to the rights of the Smiths. McBride's only new allegation was that she used the Secondary Access Easement on a "daily" basis. But this was insufficient to show a wrongful rather than permissive use because the recorded grant did not proscribe daily use if McBride had another primary access way. Because McBride had multiple opportunities to amend this claim, the demurrers was sustained without leave to amend.

Thereafter the Smiths filed a separate motion for attorney fees based on an attorney fees clause included in the recorded grant of the Secondary Access Easement, which McBride opposed. After a hearing, the trial court took the matter under submission and subsequently issued an order granting the motion and awarding the

Smiths a total of $147,540. Judgment was entered on December 28, 2015, and this appeal followed.

### III. DISCUSSION

#### A. Standard of Review

"A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citations.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. [Citations.]" (*Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 190.) "Because only factual allegations are considered on demurrer, we must disregard any 'contentions, deductions or conclusions of fact or law alleged [in the complaint].' [Citations.]" (*People ex rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 957.)

"We liberally construe the pleading with a view to substantial justice between the parties [citations]; but, '[u]nder the doctrine of truthful pleading, the courts "will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts which are judicially noticed." ' [Citations.]" (*Stella v. Asset Management Consultants, Inc.*, *supra*, 8 Cal.App.5th at pp. 190–191.) "If the allegations in the complaint conflict with the facts included in exhibits attached to or referenced in the complaint, 'we rely on and accept as true the contents of the exhibits. However, in doing so, if the exhibits are ambiguous and can be construed in the manner suggested by plaintiff, then we must accept the construction offered by plaintiff.' [Citations.]" (*Crawley v. Alameda County Waste Management Authority* (2015) 243 Cal.App.4th 396, 403–404.)

"Further, because the demurrer at issue is to an amended complaint, we may properly consider allegations asserted in the prior complaints: ' "[A] plaintiff may not discard factual allegations of a prior complaint, or avoid them by contradictory

13

averments, in a superseding, amended pleading." [Citation.]' [Citations.]" (*People ex rel. Gallegos v. Pacific Lumber Co.*, *supra*, 158 Cal.App.4th at p. 957.)

### B. Trespass

McBride contends that she stated a cause of action for trespass by alleging that the Smiths entered her property and erected encroachments that "prevent access to her property via the easement." She maintains these allegations are sufficient to support a claim that the Smiths interfered with her use of the easement, which is all that is necessary to constitute trespass, even if she was not completely prevented from accessing 1664 Spring. Putting aside for now the question whether the 4-AC alleged facts demonstrating an interference with McBride's use of the Secondary Access Easement, McBride's trespass claim is legally deficient.

Trespass is an invasion of the plaintiff's interest in the exclusive possession of land. (*Wilson v. Interlake Steel Co.* (1982) 32 Cal.3d 229, 233 (*Wilson*); *Kapner v. Meadowlark Ranch Assn.* (2004) 116 Cal.App.4th 1182, 1189 (*Kapner*).) " 'The essence of the cause of action for trespass is an "unauthorized entry" onto the land of another.' [Citation.]" (*Miller v. National Broadcasting Co.* (1986) 187 Cal.App.3d 1463, 1480.) Thus, in order to state a cause of action for trespass a plaintiff must allege an unauthorized and tangible entry on the land of another, which interfered with the plaintiff's exclusive possessory rights. (*Wilson*, at p. 233; *Capogeannis v. Superior Court* (1993) 12 Cal.App.4th 668, 674 (*Capogeannis*).)

Here, McBride cannot state a cause of action for trespass because she cannot establish that (1) she has an exclusive possessory right in the property comprising the Secondary Access Easement; or (2) the Smiths entry onto the Secondary Access Easement was unauthorized. The 4-AC allegations and judicially noticed facts establish that this land is owned by the Smiths and that McBride does not have an exclusive possessory right to the property because her interest in it is limited to an easement.

An easement "represents a limited privilege to use the land of another, . . . but does not create an interest in the land itself." (*Kazi v. State Farm Fire & Casualty Co.* (2001) 24 Cal.4th 871, 881.) " ' "An easement involves primarily the privilege of doing

a certain act on, or to the detriment of, another's property." [Citation.] An easement gives a nonpossessory and restricted right to a specific use or activity upon another's property, which right must be less than the right of ownership. [Citation.]' [Citations.] Thus, '[t]he owner of an easement is not the owner of the property, but merely the possessor of a "right to use someone's land for a specified purpose . . . ." ' [Citations.]" (*Blackmore v. Powell* (2007) 150 Cal.App.4th 1593, 1598, italics omitted.)[5]

Thus, as a matter of law, McBride cannot state a cause of action against the Smiths for trespassing on the Secondary Access Easement because they own that land and her easement does not give her a possessory right, not to mention an exclusive possessory right in that property. (*Kazi v. State Farm Fire & Casualty Co.*, *supra*, 24 Cal.4th at p. 881 [because an easement represents "only a nonpossessory right to use another's property," it is "not tangible property" as a matter of law]; see also *Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 35 ["While a lease vests exclusive possession in the lessee, the holder of an easement merely has a right to use the property."]; cf. *Kapner*, *supra*, 116 Cal.App.4th at p. 1189 [tenants in common who have the right to share equally in possession of the underlying property cannot trespass on the commonly owned property].)

This is not to say that McBride would have no recourse for an obstruction that prevented her from using the Secondary Access Easement for its intended purpose. An easement owner may sue to enjoin an obstruction or an unreasonable interference with her specific, limited, definable use of the easement by the servient owner. (Civ. Code, § 809; see, e.g., *Herzog v. Grosso* (1953) 41 Cal.2d 219, 224–225.) Or the easement owner may bring a cause of action for declaratory and injunctive relief to resolve a dispute regarding the nature and scope of that easement. (See, e.g., *Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697 (*Scruby*).) Notably, in this case, McBride has

---

[5] We note one possible caveat to this settled principle, which does not apply here. A so-called "exclusive easement" may constitute "ownership in fee, rather than an easement, depend[ing] upon the circumstances of the case [citations] . . . ." (*Blackmore v. Powell*, *supra*, 150 Cal.App.4th at p. 1600.)

not attempted to state a claim against the Smiths to enforce the terms of the recorded Secondary Access Easement.

McBride insists that she stated a claim for trespass because the 4-AC allegations "are sufficient to establish that the Smiths placed obstructions on her easement that interfere with its lawful use." (Italics omitted.) However, as McBride's own authority confirms, trespass is an unlawful interference with possession, not lawful use. (*Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1141.) McBride also posits that "[a]n easement owner can obtain judicial protection against an interference or encroachment on the owner's easement," citing *Dunsmuir v. Silva* (1957) 154 Cal.App.2d 825. However, *Dunsmuir* was an action to quiet title in an easement; that case did not involve a claim for trespass. In her reply brief, McBride contends that a "trespass to easement claim" is authorized by *Vieira Enterprises, Inc. v. McCoy* (2017) 8 Cal.App.5th 1057 (*Vieira Enterprises*). This recent decision, though misconstrued by McBride, merits some discussion.

*Vieira Enterprises* involved cross-claims between owners of neighboring commercial property, each of whom held a recorded easement over one-half a shared private road. (8 Cal.App.5th at pp. 1062–1063.) Vieira alleged that McCoy's right of way over Vieira's side of the property had been terminated by Vieira's adverse possession, and that McCoy was liable for trespassing on Vieira's property. McCoy sought declaratory and injunctive relief to enforce his easement and damages for Vieira's interference with his "exclusive and unimpeded use of his own property and his use of his easement by both temporarily blocking egress and ingress and by making improvements that encroached on McCoy's property." (*Id*. at p. 1063.) During a bifurcated trial, the court found that Vieira failed to prove the elements of adverse possession and that McCoy's activities did not "unreasonably interfere" with Vieira's property rights. Thereafter, a jury found that Vieira's "blockading of the road involved trespassing on McCoy's property" and awarded McCoy $20,000 in damages. (*Ibid.*)

On appeal, Vieira challenged the award of trespass damages on the ground that the trial court committed a prejudicial instructional error. (*Vieira Enterprises*, *supra*,

16

8 Cal.App.5th at p. 1088.)  Vieira had requested that the trial court instruct the jury that "damages for annoyance, discomfort, and mental anguish" are recoverable in an action for trespass or nuisance only when the plaintiff was an occupant of or in immediate possession of the invaded property.  (*Id.* at. p. 1089–1090.)  This request was supported by evidence establishing that McCoy did not reside on his property or maintain a rental operation or commercial office there during the relevant time period, but the trial court refused to give it, instructing instead that if McCoy proved Vieira committed a trespass, McCoy could recover damages for annoyance and mental distress caused by "the injury to his peaceful enjoyment of the property that he owned."  (*Id.* at p. 1090.)

The *Vieira Enterprises* court found that the recovery of damages for annoyance and discomfort resulting from a "trespass or nuisance" is restricted to "the occupant or possessor of the affected land," and, therefore, McCoy's "occupation or immediate possession of the relevant premises" was a requirement for the damages award. (8 Cal.App.5th at pp. 1091–1093, italics omitted.)  However, the court then determined that a plaintiff did not need to be physically present at the "moment of a tortious invasion" so long as the damage arose from a personal effect of the interference with the plaintiff's use or enjoyment of his property.  (*Id*. at p. 1094.)  Finally, the court concluded that the failure to instruct the jury regarding this occupancy requirement was harmless because there was "ample" evidence that McCoy suffered "qualifying annoyance and discomfort damages" and it was not reasonably likely the jury would have found otherwise if the question had been submitted to them.  (*Ibid*.)

Contrary to McBride's contention here, *Vieira Enterprises* does not authorize an easement holder to state a trespass claim against the owner of property encumbered by the easement.  As noted, McCoy's trespass claim was based on allegations that Vieira interfered with his "exclusive and unimpeded use of his *own* property" in addition to his use of the easement.  (*Vieira Enterprises*, *supra*, 8 Cal.App.5th at p. 1063, italics added.)  This claim was supported by evidence that Vieira erected barricades and concrete blocks that extended across the entire road, including the half owned by McCoy over which Vieira had an easement.  (*Id*. at pp. 1073, 1089.)  Furthermore, McCoy testified that

during the relevant time period Vieira's agent repeatedly yelled at him, bullied him, and chased him off the road, and that "[t]his conduct applied not only to the land on Vieira's side of the property line but also to McCoy's 'own land.' " (*Id*. at p. 1089.)  Finally, the trial court instructed the jury that the purpose of the trial was to determine McCoy's claims against Vieira "for trespass and/or nuisance . . . specifically whether [Vieira] trespassed or committed a nuisance on [McCoy's] property; and if so what money damages he is entitled to." (*Id*. at p. 1071.)  These circumstances demonstrate that McCoy's case was tried on a theory that the same damages were caused by the alleged trespass over McCoy's property and the alleged nuisance within McCoy's easement.  The present case is materially different because McBride has never alleged that the Smiths' physically invaded her property, but only that they entered the Secondary Access Easement, which lies on the Smiths' own property.

Ignoring that *Vieira Enterprises* involved substantively different facts and addressed a different legal issue, McBride relies on the following statement that the *Vieira Enterprises* court made, without citation to supporting authority, in support of its conclusion that "the occupancy requirement" applied to McCoy's damages claim:  "The beneficiary of an easement can certainly be said to occupy or possess, or not to occupy or possess, the land encumbered by the easement.  Someone who exercises a right-of-way by driving on a road across his neighbor's property is 'occupying' the road, and is at least momentarily in possession of it, while doing so.  Such a person can also be found to occupy or possess the dominant estate—in this example, the land served by the right-of-way.  We will not attempt to formulate a rule to govern all such cases.  It suffices here to say that we see no reason in policy or principle to distinguish between easements and fees in the manner proposed by McCoy." (8 Cal.App.5th at p. 1093.)

While the *Vieira Enterprises* court observed that as a practical matter an easement holder can occupy and/or possess temporarily the property encumbered by the easement, it did not hold that an easement holder has the right to exclusive possession of the easement.  As we have already discussed, the right to *exclusive possession* of the land in question is an element of a cause of action for trespass.  (See *Wilson*, *supra*, 32 Cal.3d at

18

p. 233; *Capogeannis*, *supra*, 12 Cal.App.4th at p. 674.) Thus, *Vieira Enterprises* does not alter our conclusion that the trial court did not err by sustaining the demurrer to McBride's trespass claim.

We recognize that some language in *Vieira Enterprises* could be construed as supporting the characterization of an easement as a possessory interest, but that issue was not squarely presented to the court. Rather as discussed above, McCoy's claim sounded in both trespass and nuisance, and under the facts alleged (i.e., an indivisible injury resulting from injury to McCoy's property *and* interference with his easement), neither the trial court nor the appellate court found it necessary to distinguish between those two claims. However, the two torts are distinct and, as we discuss next, the fact that McBride does not have a right to exclusive possession of the Secondary Access Easement does not preclude her from stating a cause of action against the Smiths for creating a nuisance.

### C. Nuisance

A nuisance is defined by statute as "[a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway . . . ." (Civ. Code, § 3479.) This broad definition encompasses three general categories of conduct: actions that injure health or the senses; actions that injure the free use and enjoyment of property; and actions that obstruct transportation over public water, parks, and streets.

The issue in this case is whether McBride stated a cause of action against the Smiths for creating a nuisance by injuring the free use and enjoyment of property. In this regard, "California's definition of trespass is considerably narrower than its definition of nuisance. ' "A trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it . . . . A nuisance is an interference with the interest in the private use and enjoyment of the land and does not require interference with the possession." ' [Citations.]" (*Capogeannis*, *supra*, 12 Cal.App.4th at p. 674.) On the other hand, in

19

order for a defendant's conduct to constitute a nuisance, the interference with use and enjoyment of land must be both substantial and unreasonable. (*San Diego Gas & Electric Co. v. Superior* (1996) 13 Cal.4th 893, 939-939; *Posey v. Leavitt* (1991) 229 Cal.App.3d 1236, 1243.)

Since the law of nuisance pertains to interference with use rather than exclusive possession, the fact that McBride does not have a right to exclusive possession of the Secondary Access Easement does not preclude her from stating a nuisance claim against the Smiths based on conduct allegedly occurring in the easement area. However, the trial court sustained the demurrers to this claim for a different reason—because McBride repeatedly failed to allege facts to support her pleaded theory that the Smiths' conduct in the Secondary Access Easement prevented McBride from accessing her property on 1664 Spring. On appeal, McBride contends this was essentially a ruling on the merits and an improper ground for sustaining the demurrer. Although we do not characterize the trial court's ruling as a finding on the merits, we do conclude that the demurrers to the nuisance claim should not have been sustained.

The 4-AC allegations about the Smiths' unlawful conduct are clear: McBride is challenging the installment of the pole, chain, tiles, and piling in the Secondary Access Easement. However, allegations about how these actions interfere with McBride's rights are vague and conclusory, and some are even invalid. With respect to her nuisance claim in particular, McBride alleged that the Smiths "obstructed the free use of Plaintiff's property so as to interfere with the comfortable enjoyment of her property, create visual blight and further obstruct the free passage over the 12' Secondary Access Easement." As a remedy for this alleged injury, McBride sought an order abating the "continuing nuisance" by removing all obstructions and impediments that "interfere" with the easement. In her prayer for relief, she requested, among other things, an injunction barring the Smiths from "obstructing or interfering with the free use and enjoyment" of the Secondary Access Easement. It is not clear from these allegations whether McBride is claiming that the Smiths' conduct within the Secondary Access Easement is interfering

20

with McBride's free use of the easement itself, or with her free use of her own property at 1664 Spring.  This distinction is not academic.

To the extent McBride alleges that the Smiths created a nuisance by interfering with McBride's "free use" of the Secondary Access Easement, her claim fails as a matter of law because the pleading allegations and judicially noticed facts establish that McBride does not have a right to the "free use" of the Secondary Access Easement.  The 1993 recorded grant shows that the Secondary Access Easement serves a limited purpose.  It affords secondary or emergency access to 1664 Spring; it does not entitle the owner of 1664 Spring to free use and enjoyment of the easement area.  Furthermore, by definition, " '[a]n easement is a restricted right to specific, limited, definable use or activity upon another's property, which right must be less than the right of ownership.'  [Citation.]" (*Scruby*, *supra*, 37 Cal.App.4th at p. 702, italics omitted.)  "The owner of the dominant tenement must use his or her easements and rights in such a way as to impose as slight a burden as possible on the servient tenement.  [Citation.]  Every incident of ownership not inconsistent with the easement and the enjoyment of the same is reserved to the owner of the servient estate.  [Citations.]  [¶] The owner of the servient estate may make continued use of the area the easement covers so long as the use does not 'interfere unreasonably' with the easement's purpose.  [Citations.]" (*Id*. at pp. 702–703.)

This is not to say that the Smiths are immune from nuisance liability for interfering activities within the easement.  However, in order for McBride to hold the Smiths liable for creating a nuisance on their property, she must show that the challenged conduct unreasonably interferes with the free use and enjoyment of her own property.  "It is the general rule that the unreasonable, unwarrantable or unlawful use by a person of his own property so as to interfere with the rights of others is a nuisance [citation].  In fact, any unwarranted activity which causes substantial injury to the property of another or obstructs its reasonable use and enjoyment is a nuisance which may be abated.  And, even a lawful use of one's property may constitute a nuisance if it is part of a general scheme to annoy a neighbor and if the main purpose of the use is to prevent the neighbor

21

from reasonable enjoyment of his own property [citation]." (*Hutcherson v. Alexander* (1968) 264 Cal.App.2d 126, 130.)

Thus, in order to hold the Smiths liable for nuisance, McBride must plead (and subsequently prove) that the Smiths' activities within the Secondary Access Easement interfere with McBride's free use and enjoyment of 1664 Spring in a way that is both substantial and unreasonable. As discussed, the trial court found that McBride failed to allege that the Smiths have prevented her from accessing 1664 Spring. While this fact may have future ramifications for McBride, it does not prevent her from stating a cause of action for nuisance, as the trial court erroneously believed. McBride's allegations about the changes that the Smiths' made to land encumbered by the easement were sufficient to raise a factual question about whether those changes substantially and unreasonably interfere with McBride's use and enjoyment of 1664 Spring.[6] Accordingly, the demurrers to this cause of action should not have been sustained.

### D. Prescriptive Easement

Finally, McBride contends that she stated a valid claim to quiet title to a prescriptive easement over the same strip of the Smiths' property that is encumbered by the Secondary Access Easement.

"The elements necessary to establish a prescriptive easement are well settled. The party claiming such an easement must show use of the property which has been open, notorious, continuous and adverse for an uninterrupted period of five years. [Citations.]" (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570; see also *Felgenhauer v. Soni* (2004) 121 Cal.App.4th 445, 449.) "The term 'adverse' in this context is essentially synonymous with 'hostile' and ' "under claim of right." ' [Citations.] A claimant need not believe that his or her use is legally justified or

---

[6] As noted, the 4-AC also contained an allegation that the Smiths' created a "visual blight" in the Secondary Access Easement. The law of nuisance, despite its breadth, does not entitle an adjoining landowner to an unobstructed view unless the obstruction constitutes a nuisance for some other reason. (*Wolford v. Thomas* (1987) 190 Cal.App.3d 347, 356–357.)

22

expressly claim a right of use for the use to be adverse. [Citations.] Instead, a claimant's use is adverse to the owner if the use is made without any express or implied recognition of the owner's property rights. [Citations.] In other words, a claimant's use is adverse to the owner if it is wrongful and in defiance of the owner's property rights. [Citation.]" (*Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263, 270–271 (*Windsor Pacific*), disapproved on another ground in *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 756.)

"The existence of a grant [easement] does not preclude the acquisition of greater rights by prescription." (*Kerr Land & Timber Co. v. Emmerson* (1965) 233 Cal.App.2d 200, 228; see also *Dubin v. Robert Newhall Chesebrough Trust* (2002) 96 Cal.App.4th 465, 477.) "Use with the owner's permission, however, is not adverse to the owner. [Citations.] To be adverse to the owner a claimant's use must give rise to a cause of action by the owner against the claimant. [Citations.] This ensures that a prescriptive easement can arise only if the owner had an opportunity to protect his or her rights by taking legal action to prevent the wrongful use, yet failed to do so. [Citations.]" (*Windsor Pacific*, *supra*, 213 Cal.App.4th at p. 271.)

Thus, in order for McBride to state a claim for an easement expanded by prescription, she would have to state facts that would demonstrate (1) she used the Secondary Access Easement in a way that violated the 1993 recorded grant, (2) for a period of at least five years, and (3) her wrongful use was open and notorious.

In her 4-AC, McBride alleged that she, her agents, tenants, guests, and invitees "have used the 12' Secondary Access Easement for primary access purposes for at least the last five (5) consecutive years openly, notoriously, under claim of right and/or color of title on a daily basis." She also alleged that she "prescriptively expanded the limited use of the recorded easement" because her use of the easement for primary access was contrary to language in the recorded grant.

The trial court found that these allegations were inadequate to prove that McBride used the easement in a way that was not authorized by the recorded grant, and that absent such conduct, the Smiths could not have been on notice that McBride was attempting to

23

expand the scope of the express easement. We disagree with the trial court's restrictive interpretation of the 4-AC allegations.

At the pleading stage, we do not accept as true legal conclusions, factual conclusions, or deductions. (*Coldwell Banker Residential Brokerage Co. v. Superior Court* (2004) 117 Cal.App.4th 158, 163.) Nevertheless, the policy of the law favors a "liberal interpretation" of the pleadings. (*Dieckmann v. Superior Court* (1985) 175 Cal.App.3d 345, 352.) "The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded." (*Aubry v. Tri-City Hospital Dist*. (1992) 2 Cal.4th 962, 966–967.) Furthermore, "it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory." (*Id*. at p. 967.)

Applying these principles here, we conclude that the 4-AC contains two core allegations which, if proven, are sufficient to raise a triable issue of fact as to whether McBride's use of the Secondary Access Easement for the five-year period was adverse to the Smiths' property rights. First, McBride's allegation that she used the Secondary Access Easement for "primary access" is a fact describing the extent of her usage in a way that exceeded the usage authorized by the recorded grant. Second, the 4-AC added a new allegation that McBride and her associates used the Secondary Access Easement on a "daily basis." This allegation of daily use is an allegation of material fact we accept as true for purposes of our review. Construing her pleadings liberally, McBride has alleged that on a daily basis, she and her associates used the Secondary Access Easement as their primary means of accessing 1664 Spring. These allegations are sufficient to support a cause of action for a prescriptive easement based on the theory that McBride's daily and primary use of the easement significantly expanded the use allowed under the terms of the 1993 recorded grant. Thus, the trial court erred by sustaining the demurrers to this cause of action.

24

## IV. DISPOSITION

The judgment is reversed and this case is remanded to the trial court for further proceedings consistent with this decision. The parties are to bear their own costs on appeal.

_____
RUVOLO, P. J.

We concur:


_____
RIVERA, J.


_____
STREETER, J.


A147931, *McBride v. Smith*

26

Trial Court:                              Napa County Superior Court

Trial Judge:                             Hon. Rodney G. Stone

Counsel for Appellant:           Buchalter Nemer, Buchalter, James R. Rose,
                                              Katherine H. Falace

Counsel for Respondent:        Coombs & Dunlap, Brian L. DeWitt, Daniel D.
                                              Hardy

A147931, *McBride v. Smith*