Filed 2/26/21  McBride v. Smith CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KATHLEEN MCBRIDE,<br><br>    Plaintiff and Appellant,<br>v.<br>BYRON C. SMITH AND KALMIA SMITH,<br><br>    Defendants and Respondents. | A157724 & A158396<br><br>(Napa County<br>Super. Ct. No. 26-63368) |

This is Kathleen McBride's second appeal in a dispute over a strip of land providing access to McBride's property (the Secondary Access Easement).  Defendants Byron C. and Kalmia Smith (the Smiths) own land adjoining McBride's property, and McBride alleged in her fifth amended complaint that they were the owners of the servient tenement for the Secondary Access Easement.  Sometime in 2013 or 2014, the Smiths placed certain items, including a pole and chain, in the Secondary Access Easement.  McBride's fifth amended complaint states a claim for nuisance arising from the placement of those items, as well as a claim for a prescriptive easement based on use of the Secondary Access Easement beyond the use allowed by the instrument creating the easement.

The trial court granted the Smiths' motion for summary judgment.  It found that McBride failed to show a triable issue of fact as to " 'primary,

1

daily' " use of the Secondary Access Easement or use that exceeded the terms of the easement grant. It further found no triable issue of fact regarding substantial interference with McBride's use and enjoyment of her property, as opposed to the strip of land comprising the Secondary Access Easement. The trial court denied McBride's subsequent request for leave to file a sixth amended complaint joining the heirs of Delores Daniels as indispensable parties and alleging that they, not the Smiths, owned the servient tenement. The court later awarded prevailing party attorney fees to the Smiths.

McBride challenges each of these rulings. Because there are triable issues of fact on McBride's prescriptive easement and nuisance claims, we reverse the judgment. Our reversal places the parties in the same procedural posture as if the trial court had not granted the Smiths' summary judgment motion and entered judgment in their favor, so we need not address McBride's challenge to the court's order denying leave to amend her complaint.[1] As we are reversing the judgment, we shall also reverse the trial court's subsequent order granting the Smiths attorney fees.

## I.  BACKGROUND

McBride purchased the property located at 1664 Spring Street in St. Helena, California (1664 Spring) in 2003. The only access route from Spring Street, a public road, to 1664 Spring is an alley that runs north from Spring Street and then turns sharply east, ending at 1664 Spring. The portion of the alley that runs east and ends at 1664 Spring consists of two parallel access easements, each twelve feet wide, that benefit 1664 Spring. One of these

_____

[1] McBride is free to request leave to amend her complaint on remand. However, in light of her representation to this court that she now owns the land that served as the servient tenement for the Secondary Access Easement, we observe that this long-simmering dispute appears appropriate for a negotiated resolution and urge the parties to consider settlement.

easements derives from an express grant from McBride's neighbor at 1660 Spring Street (1660 Spring) and provides a "Driveway Easement" for "vehicular and pedestrian ingress, egress, and access" burdening 1660 Spring (the Driveway Easement).

The other easement, the Secondary Access Easement, is at issue in this litigation. It was created in 1993 by an express grant from Delores Daniels and burdened the property located at 1670 Spring Street (1670 Spring), Assessor's Parcel No. 009-313-018.[2] The Secondary Access Easement provided for "a secondary right-of-way over the existing roadway surface within the easement location, for the purpose of emergency ingress and egress to the dominant estate as herein specified." "Grantee or successors may only use the easement created hereby for the purpose of emergency or secondary ingress and egress to a single-family residency and not as primary access. Grantee may not improve or expand their use of the easement beyond the boundaries of the existing roadway surface without the express written consent of Grantor, nor may Grantee cut or remove any trees or shrubbery within said easement except as necessary to keep said roadway clear for normal vehicular travel." In or around 1998, the Smiths purchased 1670 Spring from the heirs of Delores Daniels, although McBride now contends that this purchase did not include the land burdened by the servient tenement.

---

[2] We explained the configuration of the relevant properties in our decision on McBride' earlier appeal: "The southern border of 1664 Spring adjoins the northern border of 1670 Spring. Another relevant property, 1660 Spring, adjoins the eastern border of 1670 and part of 1664. An alley connecting to the public street runs east below the southern border of 1660 and 1670 Spring." (*McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1163–1164.)

## A. The Fifth Amended Complaint

The pleading history for this litigation is set forth in detail in McBride's first appeal, *McBride v. Smith, supra*, 18 Cal.App.5th at pages 1165–1172 (*McBride I*). There*,* we held that McBride stated causes of action for private nuisance and a prescriptive easement, and we reversed a judgment in favor of the Smiths after the trial court sustained a demurrer to McBride's fourth amended complaint. (*Id.* at pp. 1178–1182.)

After remand, McBride filed a verified fifth amended complaint. McBride alleged that she owned the dominant tenement and the Smiths owned the land burdened by the Secondary Access Easement. As in her prior complaint, McBride alleged that the following actions gave rise to her claims: the Smiths constructed 2x4 wood dividers that stretched along the "entire length" of the Secondary Access Easement and protruded out of the ground; the Smiths erected a "heavy chain and large pole" at the "end" of the Secondary Access Easement, with the chain extending "the entire width" of the Secondary Access Easement; the pole was bolted to the ground and could not be removed without special tools or a significant amount of strength; "[b]oth the pole and chain . . . obstruct[ed] Plaintiff's access. Even if the chain was removed, the pole would still block Plaintiff's access"; and, "because of the encroachments," McBride could not use the Secondary Access Easement. McBride alleged that the encroachments in the Secondary Access Easement constituted a nuisance because they "obstruct[] the free use of [her] property so as to interfere with the comfortable enjoyment of her property, create visual blight and further obstruct the free passage over the . . . Secondary Access Easement." She alleged that she had acquired prescriptive rights for expanded use of the Secondary Access Easement

4

because she and her predecessors had used it for primary access for at least the preceding five years.

### B. The Motion for Summary Judgment

The Smiths filed a motion for summary judgment or summary adjudication. They argued that McBride could not establish substantial or unreasonable interference with the use and enjoyment of her land for her nuisance claim, and she could not show use of the Secondary Access Easement "in violation of the terms of the recorded grant of easement" for a period of five years in a manner that was open and notorious. McBride opposed the motion, and, for the first time in her opposition papers, she claimed that Delores Daniels or her heirs still owned the land serving as the servient tenement for the Secondary Access Easement. McBride stated that she learned of this alleged fact from her expert surveyor's investigation of the Smiths' grant deed and a litigation guarantee, which she submitted along with her opposition.

The trial court granted the Smiths' motion for summary judgment. It determined that McBride had not shown a triable issue of material fact regarding "primary, daily use" on her prescriptive easement claim, which it found was the scope of the adverse use framed by her pleading, or expanded use beyond that permitted by the terms of the Secondary Access Easement. The court then addressed the issue of ownership, stating that, although it was not making a ruling on ownership, McBride would not be able to maintain a claim for a prescriptive easement against the Smiths while insisting they were not the owners. The court also found that McBride had not established a triable issue of fact on her nuisance claim: she presented evidence that her tenant hit the pole in the Secondary Access Easement when backing out of the carport on 1664 Spring, that people had concerns about the

pole and wood dividers, and that the pole made it more difficult to get into and out of the carport on 1664 Spring. However, the court reasoned that the pole and dividers were not within 1664 Spring. Thus, if a person were to hit the pole, he or she would not be using 1664 Spring, and such event would not interfere with the free use of 1664 Spring. "In essence such statements complain that [McBride's] inability to use 1670 Spring as she pleases interferes with her quiet enjoyment of 1664 Spring. Such evidence does not support an action for nuisance."

### C. The Motions to Amend and for Attorney Fees

After the trial court ruled on the motion for summary judgment, McBride sought to file a sixth amended complaint adding the heirs of Delores Daniels as indispensable parties. The trial court denied her request. The court entered a judgment stating that McBride would take nothing on her complaint and dismissing the action. McBride timely appealed. The trial court subsequently granted the Smiths $342,624 in prevailing party attorney fees, and McBride timely appealed from the amended judgment incorporating these fees. We consolidated the two appeals.[3]

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving

---

[3] On appeal, McBride requests judicial notice of: 1) lot line adjustment documents submitted by Delores Daniels in 1990 to the City of St. Helena for 1700 Spring Street and 1670 Spring; 2) a site plan map and architectural specifications for 1670 Spring from August 2006; and 3) the trial court's tentative ruling on the Smiths' motion for summary judgment. We deny her requests as irrelevant.

party is entitled to a judgment as a matter of law." (Code Civ. Proc.[4], § 437c, subd. (c).) A defendant meets "his or her burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the cause of action." (§ 437c, subd. (p)(2).) Where, as here, the defendant moves for summary judgment on the grounds that one or more elements of the plaintiff's claim cannot be established, the defendant must present evidence that either "conclusively negate[s] an element of the plaintiff's cause of action" or "show[s] that the plaintiff does not possess, and cannot reasonably obtain," evidence needed to establish an element of the claim. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853–854 (*Aguilar*).) If the defendant meets this burden, the burden shifts to the plaintiff to show "that a triable issue of one or more material facts exists as to the cause of action." (§ 437c, subd. (p)(2).)

We review an order granting summary judgment de novo, considering the record before the trial court independently. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60; *id.* at p. 65 (dis. opn. of Kennard, J.).) "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

## B. The Prescriptive Easement Claim

### 1. Governing Principles for a Prescriptive Easement

" 'The elements necessary to establish a prescriptive easement are well settled. The party claiming such an easement must show use of the property

---

[4] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

which has been open, notorious, continuous and adverse for an uninterrupted period of five years.' " (*McBride I, supra*, 18 Cal.App.5th at p. 1180.) "Adequate open, visible, and notorious use of the property raises an inference that the owner has either actual or constructive notice of the use." (6 Miller & Starr, California Real Estate (4th ed. 2020 update) § 15:34.)

We focus on the element of adverse use because the Smiths moved for summary judgment on the ground that no triable issue of fact existed regarding McBride's use of the Secondary Access Easement in violation of the terms of the recorded grant of easement, and the trial court granted the motion on this basis. " 'The term "adverse" . . . is essentially synonymous with "hostile" and " 'under claim of right.' " ' " (*McBride I, supra*, 18 Cal.App.5th at p. 1180.) This " 'means no more than that possession must be hostile, which in turn means only that the owner has not expressly consented to it by lease or license or has not been led into acquiescing in it by the denial of an adverse claim on the part of the possessor.' " (*Felgenhauer v. Soni* (2004) 121 Cal.App.4th 445, 450.) "A claimant need not believe that his or her use is legally justified or expressly claim a right of use for the use to be adverse. [Citations.] Instead, a claimant's use is adverse to the owner if the use is made without any express or implied recognition of the owner's property rights. [Citations.] In other words, a claimant's use is adverse to the owner if it is wrongful and in defiance of the owner's property rights." (*McBride I*, at p. 1181.) As we have acknowledged, " 'The existence of a grant [easement] does not preclude the acquisition of greater rights by prescription.' [Citations.] 'Use with the owner's permission, however, is not adverse to the owner.' " (*Ibid.*)

8

## 2. Analysis

To determine whether the trial court correctly granted summary judgment, we would usually begin by analyzing whether the Smiths met their initial burden of demonstrating that one or more elements of McBride's claim cannot be established. (*Aguilar*, *supra*, 25 Cal.4th at pp. 853–854.) But McBride did not argue below that the Smiths failed to meet their initial burden, and she only briefly mentions burden shifting on her prescriptive easement claim in her argument entitled, "McBride Raised Triable Issues of Material Fact on Both the Prescriptive Easement and Nuisance Claims." McBride has thus forfeited this argument. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [a brief must "[s]tate each point under a separate heading or subheading summarizing the point"]; *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 [failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading].) In any event, it appears that the Smiths satisfied their initial burden with statements, described in more detail below, from Dylan Gunther that he typically used the Driveway Easement when he lived at 1664 Spring and from Kalmia Smith reciting that, from her observations while living at 1670 Spring, people usually used the Driveway Easement to access 1664 Spring.

We next address whether McBride established triable issues of fact regarding open and notorious use of the Secondary Access Easement exceeding the use permitted by the recorded grant of easement. The Smiths presented a declaration from Dylan Gunther, a tenant of 1664 Spring from January 2013 through December 2014, stating that, before the Smiths installed the encroachments in March 2013, he "almost always traveled to and from 1664 Spring along the east side of the access road, the side farther

9

from 1670 Spring Street." To exit 1664 Spring, Gunther would back up from his typical parking spot and drive out on the side of the easement closest to 1660 Spring. Kalmia Smith declared that she lived at 1670 Spring full-time from 1997 to May 2008, and then from September 2011 through the date of the motion for summary judgment, other than during the summer months. Smith stated that during those timeframes, "the Secondary Access Easement Area ha[d] never been used to access 1664 Spring frequently enough to call such use 'daily' or even 'consistent.' To my knowledge, which comes from years of observation, people seeking to access 1664 Spring usually use the Primary Access Easement Area [the Driveway Easement]."

McBride countered with the following admissible evidence: McBride used the Secondary Access Easement consistently and on a daily basis at all times when she lived at 1664 Spring from December 16, 2004 to February 29, 2005 and November 27, 2012 to February 3, 2013, as well as when her parents lived there in 2003 and 2004. She "observed family, renters and potential renters, and maintenance companies using the entire roadway freely prior to the obstructions being placed by the Smiths in the [Secondary Access Easement,]" and she declared that her "tenants have also used the entire width of the roadway (without regard to which side was the 'primary' and which side was the 'secondary.')" McBride's daughter stated that, each time she drove down the gravel drive comprised of the Driveway Easement and the Secondary Access Easement, approximately twenty-four times a year from 2003 to 2014, she drove naturally down the center of the gravel drive. McBride's real estate agent, who assisted McBride with finding tenants and potential buyers "over the years," also stated that he traveled to 1664 Spring several times, each time using the Secondary Access Easement until the Smiths placed the obstructions in January 2014.

10

McBride's evidence is sufficient to raise triable issues of fact regarding open, notorious use beyond that permitted by the grant of the Secondary Access Easement. Although Dylan Gunther lived at 1664 Spring during part of the five-year period immediately preceding McBride's suit and did not typically use the Secondary Access Easement, McBride's claim is not strictly limited to this period, as she alleged adverse use "for at least the last five (5) consecutive years." Kalmia Smith stated generally that from 1997 to May 2008, and then from September 2011 on (excepting summers), use of the Secondary Access Easement was not daily or consistent, as people usually used the Driveway Easement. But McBride contradicted Smith with evidence of her daily use of the Secondary Access Easement in 2003 and 2004, from December 16, 2004 to February 29, 2005, and from November 27, 2012 to February 3, 2013, as well as with her statements that her tenants used the entire width of the roadway and that she observed family, renters, potential renters, and maintenance companies using the entire roadway "freely" prior to the Smiths' placement of obstructions. In addition, evidence that McBride's daughter and real estate agent used the Secondary Access Easement every time they traveled to 1664 Spring further contradicted Smith's statement that people usually used the Driveway Easement. Because triable issues of fact exist on open, notorious use exceeding that

permitted by express grant of easement, the Smiths were not entitled to summary adjudication of McBride's prescriptive easement claim.[5]

## C. The Nuisance Claim

"[T]he essence of a private nuisance is its interference with the use and enjoyment of land. [Citation.] The activity in issue must 'disturb or prevent the comfortable enjoyment of property[.]' " (*Oliver v. AT&T Wireless Services* (1999) 76 Cal.App.4th 521, 534.) The interference must be of sufficient nature, duration, or amount so as to substantially and unreasonably hamper the plaintiff's use and enjoyment of his or her property. (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 938.) " 'So long as the interference is substantial and unreasonable, and such as would be offensive or inconvenient to the normal person, virtually any disturbance of the enjoyment of the property may amount to a nuisance.' " (*Koll-Irvine Center Property Owners Assn. v. County of Orange* (1994) 24 Cal.App.4th 1036, 1041.) An interference is said to be substantial if it causes the plaintiff to suffer a " 'real and appreciable invasion of [his or her] interests,' " which invasion is " 'offensive, seriously annoying, or intolerable.' " (*San Diego Gas & Electric Co.*, at p. 938.) The test for unreasonableness is whether the gravity of the harm to the plaintiff outweighs the social utility of the defendant's conduct. (*Ibid.*) To support a nuisance claim, an interference

---

[5] McBride also argues that the Smiths do not own the servient tenement and that there is accordingly a triable issue of fact as to ownership that prevents summary adjudication of this claim. At oral argument, the Smiths' counsel represented that the Smiths believe they have a claim of ownership based on the intent of the grantor or prescription. Because we find triable issues of fact on open, notorious, and adverse use, and because the Smiths did not move for summary adjudication on the ground that McBride could not show that they owned the servient tenement, we need not address the question of ownership in this appeal.

12

must be both substantial and unreasonable; these are questions of fact. (*Id.* at pp. 938–939.)

A nuisance claim may be based on substantial and unreasonable interference with a plaintiff's easement rights. "When a person interferes with the use of an easement[,] he [or she] deprives the easement's owner of a valuable property right and the owner is entitled to compensatory damages. The interference is a private nuisance and the party whose rights have been impeded can recover damages as measured in the case of a private nuisance." (*Moylan v. Dykes* (1986) 181 Cal.App.3d 561, 574; see also *Herzog v. Grosso* (1953) 41 Cal.2d 219, 224–225 [affirming the trial court's order requiring removal of the defendant's fence and gates that interfered with the plaintiffs' use and enjoyment of their easement].)

McBride raised triable issues of fact on her nuisance claim.[6] She declared that she is physically unable to move the pole in the Secondary Access Easement. Her tenants declared that the pole is hard to maneuver around, it makes parking in the carport on 1664 Spring very difficult, and one tenant hit the pole while backing out of the carport. In addition, a neighbor declared that the pole blocks a vehicle's ability to exit 1664 Spring. And both parties presented evidence that the Smiths placed a chain across the width of the Secondary Access Easement before McBride sued. The

---

[6] With their motion for summary judgment, the Smiths submitted the agreement creating the Secondary Access Easement and evidence as follows: the allegedly encroaching items were not within the boundaries of 1664 Spring; the items had not physically prevented entrance or blocked access to 1664 Spring; the pole did not prevent backing out of the carport on 1664 Spring if no vehicle was parked in front of the house; and 1664 Spring had parking areas other than the carport. Because McBride does not challenge the Smiths' showing, we accept that they satisfied their initial burden of production.

Smiths moved for summary judgment on the ground that McBride could not show substantial or unreasonable interference because the items they placed did not interfere with her use and enjoyment of 1664 Spring.  However, as previously explained, McBride raised triable issues of fact on her claim that she had established a prescriptive easement for ingress and egress over the area where the items were placed.  The factual disputes as to McBride's prescriptive easement claim and the evidence McBride submitted on her nuisance claim, taken together, raise triable issues of fact regarding whether the items placed by the Smiths substantially and unreasonably interfered with McBride's use of that easement.  And even without regard to her prescriptive easement claim, McBride has an express easement "for the purpose of emergency or secondary ingress and egress to a single-family residency," and there are triable issues of fact as to whether the items placed by the Smiths substantially and unreasonably hindered McBride's use of the easement for these permitted purposes.

## III.   DISPOSITION

The judgment is reversed, and the case is remanded to the trial court for proceedings consistent with this opinion.  McBride shall recover her costs on appeal.


BROWN, J.

WE CONCUR:

POLLAK, P. J.
STREETER, J.

*McBride v. Smith* (A157724, A158396)

14