**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SMILEDIRECTCLUB, LLC, a Tennessee limited liability company; JEFFREY SULITZER, D.M.D., an individual and a California Professional Corporation, *Plaintiffs-Appellants*, | No. 20-55735 D.C. No. 2:19-cv-08902-GW-MAA |
| v. | ORDER AND AMENDED OPINION |
| JOSEPH TIPPINS, individually; KAREN M. FISCHER, M.P.A., individually; FRAN BURTON, M.S.W., individually; STEVEN MORROW, DDS, MS individually; STEVEN CHAN, DDS; YVETTE CHAPPELL INGRAM, M.P.A., individually; ROSS LAI, DDS; ABIGAIL MEDINA, individually, in her official capacity as a Member of the Dental Board of California; ROSALINDA OLAGUE, RDA, B.A., individually, and in her official capacity as a Member of the Dental Board of California; JOANNE PACHECO, RDH, M.A.O.B., individually and in her official capacity as a Member of the Dental Board of California; THOMAS STEWART, DDS, individually and in his official capacity as a Member of | |

the Dental Board of California;
BRUCE WHITCHER, DDS, individually
and in his official capacity as a
Member of the Dental Board of
California; JAMES YU, DDS, M.S.,
individually and in his official
capacity as a Member of the Dental
Board of California; DOES, 1–10;
MEREDITH MCKENZIE, individually
and in her official capacity as a
Member of the Dental Board of
California; JOSEPH TIPPINS, in his
official capacity as an Investigator in
the Enforcement Unit of the Dental
Board of California; KAREN M.
FISCHER, M.P.A., in her official
capacity as Executive Director for the
Dental Board of California; FRAN
BURTON, M.S.W., in her official
capacity as a Member of the Dental
Board of California; STEVEN
MORROW, DDS, MS, in their official
capacities as Officers and or Members
of the Dental Board of California;
STEVEN CHAN, DDS, in their official
capacities as Officers and/or Members
of the Dental Board of California;
YVETTE CHAPPELL-INGRAM, MPA, in
their official capacities as Officers
and/or Members of the Dental Board
of California; ROSS LAI; LILIAN
LARIN, DDS, individually and in their
official capacities as Officers and/or
Members of the Dental Board of

California; HUONG LE, DDS, M.A,
individually and M.A., and in his
official capacity as a Member of the
Dental Board of California,
*Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted July 26, 2021
San Francisco, California

Filed March 17, 2022
Amended April 21, 2022

Before: M. Margaret McKeown and Jacqueline H.
Nguyen, Circuit Judges, and Royce C. Lamberth,[*]
District Judge.

Order;
Opinion by Judge McKeown

---

[*] The Honorable Royce C. Lamberth, United States District Judge
for the District of Columbia, sitting by designation.

## SUMMARY[**]

### Antitrust

The panel filed an order amending its opinion and an amended opinion affirming in part and reversing in part the district court's dismissal of an action brought under antitrust and constitutional law by a dentist, his professional corporation, and the teledentistry company SmileDirectClub, LLC, against members and employees of the Dental Board of California.

The SmileDirect parties alleged that after they developed an online service model for patients to access certain orthodontic services, namely clear teeth aligners, defendants conspired to harass them with unfounded investigations and an intimidation campaign, with hopes of driving them out of the market.

The panel held that the SmileDirect parties sufficiently pled Article III standing because they alleged an injury in fact that was fairly traceable to defendants' challenged conduct and was judicially redressable.

The panel concluded that the SmileDirect parties sufficiently alleged anticompetitive concerted action, or an agreement to restrain trade, to meet the pleading standards of Federal Rule of Civil Procedure 12(b)(6). The panel therefore partially reversed the district court's dismissal of the SmileDirect parties' antitrust claim under § 1 of the Sherman Act. The panel rejected the broad proposition that

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

regulatory board members and employees cannot form an anticompetitive conspiracy when acting within their regulatory authority. As to certain other defendants, the panel affirmed dismissal because the SmileDirect parties failed to plead facts sufficient to tie them to the alleged conspiracy.

The panel affirmed the district court's dismissal of the SmileDirect parties' claim under the Dormant Commerce Clause, which prohibits states from discriminating against interstate commerce.

The panel affirmed the district court's dismissal of the SmileDirect parties' claim that defendants subjected them to disparate treatment in violation of the Equal Protection Clause. The panel held that to plead a class-of-one equal protection claim, plaintiffs must allege facts showing that they have been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Joining other circuits, the panel held that a class-of-one plaintiff must be similarly situated to the proposed comparator in all material respects. The SmileDirect parties fell short of this showing because, rather than claiming that they stood on the same footing as others, they instead touted their uniqueness.

Defendants did not appeal, and the panel did not review, the district court's denial of state-action immunity.

**COUNSEL**

James D. Dasso (argued), Foley & Lardner LLP, Chicago, Illinois; Byron J. McLain, Foley & Lardner LLP, Los Angeles, California; for Plaintiffs-Appellants.

Sharon L. O'Grady (argued), Deputy Attorney General; Mark R. Beckington, Supervising Deputy Attorney General; Thomas S. Patterson, Senior Assistant Attorney General; Rob Bonta, Attorney General of California; Office of the California Attorney General, San Francisco, California; for Defendants-Appellees.

Andrew N. DeLaney (argued), Daniel E. Haar, and Nickolai G. Levin, Attorneys; Makan Delrahim, Assistant Attorney General; Michael F. Murray, Acting Principal Deputy Assistant Attorney General; Daniel S. Guarnera, Counsel to the Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Amicus Curiae United States of America.

Joshua Polk and Anastasia Boden, Pacific Legal Foundation, Sacramento, California, for Amicus Curiae Pacific Legal Foundation.

**ORDER**

The Opinion filed on March 17, 2022, is amended as follows:

On slip opinion page 10, line 15, insert a footnote after <(1943).> stating: <The Board Actors do not appeal—and we do not review—the district court's denial of state-action immunity.>.

No petitions for panel rehearing or rehearing en banc will be entertained.

---

**OPINION**

McKEOWN, Circuit Judge:

It is easy to recall examples of consumer-oriented business models in the medical field that were once resisted by incumbents but ultimately—through litigation, regulation, and legislation—resulted in cheaper and more accessible services.  Take, for example, eyeglass prescriptions.  At one time, the consumer had to purchase eyeglasses from the prescribing doctor.  Now doctors must provide a copy of the prescription, so consumers can get their eyeglasses at Costco, Warby Parker, or a host of online suppliers.  Hearing aids represent another consumer advance.  Once approved by the Food and Drug Administration, certain over-the-counter hearing aids can be purchased without seeing a healthcare professional.  In the dental field, hygienists in some states can sometimes provide services without the supervision of a dentist.  In each case, entrenched interests fought to preserve the status quo and to stifle the innovators' entry into the market.

In a similar vein, this appeal involves a company that developed an online service model that, according to the company, makes it cheaper, easier, and more convenient for patients to access certain orthodontic services, namely clear teeth aligners. The company alleges that incumbents in the dental and orthodontia markets have illegally conspired to shut down its disruptive business model. What distinguishes this case from most run-of-the-mill antitrust lawsuits is that it involves not only business competitors, but competitors who sit on a regulatory board that oversees the practice of dentistry.

A dentist, his professional corporation, and the teledentistry company SmileDirectClub, LLC (together, the "SmileDirect parties") are the newcomers. Members and employees of the Dental Board of California—largely made up of traditional dentists and orthodontists who have a financial motive to view the newcomers as competition—allegedly conspired to harass the SmileDirect parties with unfounded investigations and an intimidation campaign, with hopes of driving them out of the market.

We conclude that the SmileDirect parties sufficiently alleged anticompetitive concerted action to meet the pleading standards of Federal Rule of Civil Procedure 12(b)(6). We thus partially reverse the district court's dismissal of the Sherman Act claim and reject the broad proposition—offered up by the board members and the district court—that regulatory board members and employees cannot form an anticompetitive conspiracy when acting within their regulatory authority. As to certain other defendants, we affirm dismissal—not because of their regulatory authority—but because the SmileDirect parties failed to plead facts sufficient to tie them to the alleged

conspiracy.  We also affirm dismissal of the Equal Protection Clause and Dormant Commerce Clause claims.

## BACKGROUND[1]

Instead of traditional wire-and-bracket braces, some orthodontic patients choose clear teeth aligners, which are supposedly more cosmetically appealing.  SmileDirectClub, LLC ("SmileDirect") sells these clear aligners through a proprietary direct-to-consumer online platform.   Their telemedicine model allows SmileDirect-affiliated dentists to treat out-of-state patients, subject to state licensure requirements.

Dr. Jeffrey Sulitzer is one such dentist.  He lives in Washington State but is licensed in California and often treats California-based patients.  Through his professional corporation, Sulitzer P.C., he owns the only SmileDirect-affiliated dental practice in California.  Sulitzer has several brick-and-mortar "SMILESHOP stores" where technicians gather images of patients' teeth and gums.  He also operates a "SmileBus" with technicians onboard who do the same sort of imaging.  As a third option, patients can go online, order an impression kit from SmileDirect's website, receive the kit from a lab in Tennessee, then make the impressions at home.  When the patient returns the impressions to the lab, a dentist reviews the treatment plan, the aligners are manufactured, and then SmileDirect mails the aligners to the patient.

---

[1] This background draws from the First Amended Complaint, which we refer to as the Complaint for ease of reference.  Because the district court dismissed the Equal Protection Claim before the SmileDirect parties amended the complaint, we also recount factual allegations from the original complaint, as supplemented by the SmileDirect parties' Offer of Proof.

This appeal arises out of a dispute between the SmileDirect parties and the Dental Board of California (the "Board"). By statute, the Board regulates the practice of dentistry in California. *See* Cal. Bus. & Prof. Code §§ 1600–1621. It enforces dental regulations, administers licensing exams, and issues dental licenses and permits. *Id.* § 1611. The Board is made up of fifteen members: "eight practicing dentists, one registered dental hygienist, one registered dental assistant, and five public members." *Id.* § 1601.1(a). Since many of its members compete in the market for teeth-straightening services, they allegedly view SmileDirect as a "competitive threat." The Complaint alleges that certain members of the Board, motivated by their private desires to stifle competition, mounted an aggressive, anti-competitive campaign of harassment and intimidation designed to drive the SmileDirect parties out of the market.

Complicating matters a bit, the SmileDirect parties have not sued the Board itself; the Complaint instead names sixteen individuals, plus ten unnamed "Doe" defendants, who were at some point affiliated with the Board (together, the "Board Actors"). Most are current or former board members; one (Joseph Tippins) is an investigator employed by the Board; and one (Karen M. Fischer) is the Board's Executive Director. Many of the board members maintain "traditional dental and orthodontic practices" in California. Several have shops within blocks of SMILESHOP stores. And some belong to the American Dental Association and the California Dental Association, trade associations that have allegedly "opposed [SmileDirect's] business model."

The Complaint alleges that the Board Actors "have agreed, combined and conspired to pursue an aggressive, anti-competitive campaign of harassment and intimidation against" the SmileDirect parties. It alleges that "[t]he

campaign includes, among other things, coordinated statewide raids; false statements; misconduct in front of consumers; and a retaliatory accusation filed in response to [this] lawsuit." The Complaint contends that these actions violated the Sherman Antitrust Act; the Dormant Commerce Clause; the Equal Protection Clause; the Due Process Clause;[2] and California's Unfair Competition Law.

The district court dismissed the federal claims and declined to exercise supplemental jurisdiction over the state law claim. With respect to the Sherman Act claim, the district court first rejected the Board Actors' argument that they were entitled to state-action antitrust immunity under *Parker v. Brown*, 317 U.S. 341 (1943).[3] After a second round of briefing, the district court nonetheless dismissed the Sherman Act claim, holding that the Complaint only pled "an agreement consistent with the Dental Board's regulatory purpose," and that the alleged investigation "is to be expected of a regulatory body given the authority to investigate those regulated."

We disagree. In rejecting the allegations as insufficient, the district court went astray on two important principles. First, it indirectly imported a summary judgment standard at the motion to dismiss stage. And second, it absolved the Board Actors because they acted "consistent with the Dental Board's regulatory purpose," effectively granting them antitrust immunity without holding them to the strictures of the state-action immunity doctrine. *See N.C. State Bd. of*

---

[2] The SmileDirect parties do not seek to resuscitate their Due Process claim on appeal.

[3] The Board Actors do not appeal—and we do not review—the district court's denial of state-action immunity.

*Dental Exam'rs v. FTC*, 574 U.S. 494, 504–05 (2015). We conclude that with respect to certain defendants, the Complaint plausibly alleged anticompetitive concerted action under the Sherman Act.

## I. Standing

As a threshold matter, we reject the Board Actors' argument that the SmileDirect parties lack standing to sue. To adequately allege Article III standing, the SmileDirect parties must plead that they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The SmileDirect parties allege that the Board's campaign of harassment and intimidation injured their "business, revenue, goodwill, employee relations, and reputation in the marketplace." The intrusive raids allegedly interrupted business operations and intimidated customers visiting SmileDirect stores. These injuries are fairly traceable to the Board Actors, who allegedly authorized the campaign. And the Board Actors do not dispute that this harm is judicially redressable through an injunction or other appropriate remedy. The net result— the Board Actors have sufficiently pled standing.

## II. Sherman Act Claim

We review de novo the district court's dismissal for failure to state a claim, accepting as true all nonconclusory allegations in the Complaint. *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015).

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. To state

a claim under § 1, plaintiffs must plead "(1) 'a contract, combination or conspiracy among two or more persons or distinct business entities'; (2) which is intended to restrain or harm trade; (3) 'which actually injures competition'; and (4) harm to the plaintiff from the anticompetitive conduct." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1129 (9th Cir. 2015) (quoting *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012)).  In the district court, the Board Actors moved to dismiss the Sherman Act claim on just the first two elements. Though they argue the other elements on appeal, we only consider whether the Complaint plausibly pled (1) an agreement (2) to restrain trade.  *See G & G Prods. LLC v. Rusic*, 902 F.3d 940, 950 (9th Cir. 2018) (issues not raised before the district court are forfeited on appeal).

On the first element, we hold that the SmileDirect parties plausibly pled concerted action, but we affirm dismissal as to those defendants with insufficient allegations tying them to the alleged conspiracy.  On the second element, consistent with the Supreme Court's observation that the Sherman Act prohibits "anticompetitive self-regulation by active market participants," *N.C. State*, 574 U.S. at 505, we hold that agreements are not always lawful simply because they are "consistent with" the purpose of a regulatory Board dominated by market participants.

By requiring the SmileDirect parties to plead facts inconsistent with the Board's regulatory purpose, the district court applied a standard more appropriate at the summary judgment stage, where § 1 plaintiffs must offer "evidence that tends to exclude the possibility" of lawful independent conduct. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984).  Rule 12(b)(6) does not require this heightened showing.  *See Erie Cnty. v. Morton Salt, Inc.*, 702

F.3d 860, 869 (6th. Cir. 2012) (explaining that, at the motion to dismiss stage, a § 1 "plaintiff need not allege a fact pattern that 'tends to exclude the possibility' of lawful, independent conduct"). We apply the standard that applies to all § 1 complaints: a plaintiff must plausibly allege an agreement that is unreasonable "per se" or under the "rule of reason." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283–84 (2018). Analyzing the allegations within that framework, we hold that the Complaint plausibly pleads that the agreement was anticompetitive. We note, however, that we make no judgment on the merits of the claims and whether those claims will withstand scrutiny in the next phase of the litigation.

## A. Contract, Combination, or Conspiracy

The SmileDirect parties allege they suffered a series of anticompetitive acts committed by the Board members and various agents. The Complaint does not, however, name the Board as a defendant. Instead, the Complaint names various Board members and employees.[4] None of these defendants—apart from Tippins—are alleged to have directly caused harm to the SmileDirect parties. Rather, the Board Actors purportedly acted together to use the Board to inflict anticompetitive injury on their behalf. That circumstance distinguishes this case from those where conspiracy may be inferred from the parallel conduct of several ostensibly independent actors. *See, e.g.*, *In re Citric Acid Litig.*, 191 F.3d 1090, 1102 (9th Cir. 1999) (firms

---

[4] The Board Actors do not argue, and we therefore do not consider, whether they are a single entity incapable of conspiring within the meaning of § 1. *See, e.g., N.C. State Bd. of Dental Exam'rs v. FTC*, 717 F.3d 359, 371–72 (4th Cir. 2013), *aff'd on other grounds*, 574 U.S. 494 (2015); *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 191–92 (2010).

following similar pricing strategies). Here conspiracy must be inferred, if at all, as stemming from the actions of one entity (the Board) and thereafter imputed to its members.

Our review of the Complaint reveals the SmileDirect parties have adequately alleged the active participation of many—but not all—of the Board Actors in the conspiracy. The Complaint plausibly alleges that certain Board Actors agreed to launch a "campaign . . . to protect the economic interests of the traditional orthodontia market," primarily because of alleged private economic motives. As the Supreme Court has remarked in denying blanket antitrust immunity to state regulatory boards, allowing "active market participants . . . to regulate their own markets free from antitrust accountability" poses a significant risk that those entities might engage in "self-dealing" to promote their private interests. *N.C. State*, 574 U.S. at 505, 510. The Board members who are dentists fall squarely within this realm. Their governance role is sufficient, when coupled with the congruence between the Board's actions and their own self-interest, to allow a plausible inference of active participation. *See Osborn v. Visa Inc.*, 797 F.3d 1057, 1067 (D.C. Cir. 2015) (holding plaintiffs did "more than allege 'mere membership'" where complaint alleged defendants used their governance role to force association to take anticompetitive actions that served their economic interests); *cf. SmileDirectClub, LLC v. Ga. Bd. of Dentistry*, 1:18-CV-02328-WMR, 2019 WL 3557892, at *4 (N.D. Ga. May 8, 2019) (denying a motion to dismiss Sherman Act claims against state dental board members, because the allegations "are sufficient to plausibly allege concerted action"), *aff'd on other grounds sub nom. SmileDirectClub, LLC v. Battle*, 969 F.3d 1134 (11th Cir. 2020), *on reh'g en banc*, 4 F.4th 1274 (11th Cir. 2021).

Our conclusions draw from the circuit's caselaw regarding anticompetitive conduct by membership organizations, which provide a close analog in this circumstance. We recognize that membership is not enough, standing alone, to allow a plausible inference that an organization's members are engaged in an antitrust conspiracy. *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 232 (9th Cir. 1974); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) ("[M]embership in an association does not render an association's members automatically liable for antitrust violations committed by the association."). And "[e]ven participation on the association's board of directors is not enough by itself." *Kendall*, 518 F.3d at 1048.

Ultimately, we require some showing—direct or circumstantial—that the defendants "actively participated in an individual capacity in the scheme." *Kline*, 508 F.2d at 232 (quoting *N. Cal. Pharmaceutical Ass'n v. United States*, 306 F.2d 379, 388–89 (9th Cir. 1962)). But the allegations only go so far. In referring to the defendants collectively, the Complaint alleges that the SmileDirect parties' business model poses a competitive threat to the dentist Board members' "dental practices;" that several Board members belong to powerful trade groups; and that they collectively have "an economic incentive" to drive SmileDirect out of the market. These allegations logically apply only to the dentists and orthodontists who allegedly view SmileDirect as competition. We therefore affirm dismissal as to defendants Chappell-Ingram, McKenzie, Medina, Pacheco, and Olague. The Complaint pleads nothing (besides their presence on the Board) to implicate these defendants in the alleged conspiracy. *See Kendall*, 518 F.3d at 1048.

Although defendants Tippins, Fischer, and Burton are not dentists or dental professionals, at this stage their alleged involvement in the conspiracy withstands the motion to dismiss. Tippins is the investigator who allegedly executed the raids and sent document requests. Fischer is the Executive Director who allegedly attended Enforcement Committee meetings and dispatched Tippins to the SmileBus. Burton is a member of the Enforcement Committee, which, according to the Complaint, has some authority over investigators and their enforcement activities. Given these defendants' close involvement in the alleged anticompetitive acts, the Complaint plausibly alleges their active participation, thus satisfying the concerted action element.

## B. Unreasonable Restraint of Trade

Concerted action is not enough to sustain a § 1 violation. The agreement or conspiracy must be "intended to restrain or harm trade." *Name.Space*, 795 F.3d at 1129. Because the Supreme Court has interpreted § 1 "to outlaw only *unreasonable* restraints" on trade, courts must consider whether a restraint falls into the "small group of restraints [that] are unreasonable *per se*" or is otherwise unreasonable under a "fact-specific assessment" known as the "rule of reason." *Ohio*, 138 S. Ct. at 2283–84 (internal citations and quotations omitted). No *per se* violation is alleged here, so we ask whether the alleged "restraint's harm to competition outweighs its procompetitive effects." *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001).

Noting that the Board Actors could not demonstrate active state supervision, the district court rejected their argument that they were home free under *Parker v. Brown*'s state-action immunity doctrine. *See* 317 U.S. at 352 (holding that restraints imposed by the state "as an act of government"

are immune from antitrust liability). However, in the same breath, the district court appeared to hold that conduct within the Board's regulatory authority cannot be anticompetitive. In their motion to dismiss, the Board Actors argued that the actions of a state regulatory board could not be unreasonable if the board was "functioning in" its "ordinary regulatory capacity." The district court took this rationale one step further and held that an agreement "consistent with the Dental Board's regulatory purpose" cannot be unreasonable. But rejecting *Parker* immunity—then turning around and blessing the same conduct because it falls within the Board's authority—effectively grants the Board Actors a free pass under the Sherman Act. That analysis is at odds with the Supreme Court's view, our precedent, and that of our sister circuits. We hold that the Board Actors' concerted action can be unreasonable under the Sherman Act—even if they seek to achieve their anticompetitive aims through the exercise of valid regulatory authority.

Like professional trade associations, members of a regulatory agency "act[] unlawfully" when their actions "are unduly anticompetitive and without adequate redeeming virtues." Phillip E. Areeda & Herbert Hovenkamp, 4 *Antitrust Law* ¶ 1477 (4th & 5th eds. 2011). As the Supreme Court has stressed, *"*[t]he similarities between agencies controlled by active market participants and private trade associations are not eliminated simply because the former are given a formal designation by the State, vested with a measure of government power, and required to follow some procedural rules." *N.C. State*, 574 U.S. at 511.

The district court viewed the allegations in the Complaint as nothing more than an ordinary investigation that "is to be expected of a regulatory body." As alleged, this was no standard or ordinary investigation; it was an

abusive, aggressive, retaliatory, and targeted campaign designed to intimidate the SmileDirect parties and to drive them out of the market. *Cf. N.C. State Bd. of Dental Exam'rs v. FTC*, 717 F.3d 359, 373 (4th Cir. 2013), *aff'd on other grounds*, 574 U.S. 494 (2015) ("[T]he lengthy consistent campaign of sending letters and cease-and-desist orders is suggestive of coordinated action.").

According to the SmileDirect parties, a letter from a trade association prompted the investigation, not a dissatisfied consumer or patient who had been harmed. Indeed, patient safety is not a focus of the proceedings here. The Complaint alleges that the trade association has advocated against SmileDirect's business model, and that Board representatives communicated with the association about the supposedly confidential investigation behind the scenes. Once the investigation was underway, the Board's investigators conducted aggressive and unreasonable "raids" that were "designed to maximize . . . interference, disruption, and public spectacle." And they allege that, in response to this lawsuit, the Board Actors began a "retaliatory" administrative proceeding to possibly revoke Sulitzer's dental license.

Although each of those actions may independently fall within the Board's authority—which the Complaint does not concede—they could still be illegal if their anticompetitive effects outweighed their legitimate regulatory justifications. *See Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1108 (9th Cir. 2021). It may well be, as the Board Actors argue, that the investigation was conducted "dutifully" and "by the book," based on legitimate complaints, or that the Board was screened off from ongoing investigations, thus defeating any claim of a conspiracy. But because we do not consider the Board Actors' competing

facts at the pleadings stage, and because Rule 12 does not require the Complaint to exclude the possibility of lawful conduct, *see SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 425–26 (4th Cir. 2015), we hold that the Complaint plausibly alleges a conspiracy to restrain trade.

The Fourth Circuit's analysis in a similar case is instructive. *N.C. Dental*, 717 F.3d 359. In that case, the Federal Trade Commission found that the state dental board, largely comprised of practicing dentists, worked to "shut down" non-dentist teeth whitening services. *Id.* at 365. In furtherance of that conspiracy, the Board issued several cease-and-desist letters threatening that the non-dentists were committing a misdemeanor by offering teeth-whitening services. *Id.* That intimidation campaign "successfully expelled non-dentist providers from the North Carolina teeth-whitening market." *Id.* After making clear that the state dental board was capable of conspiring under the Sherman Act, *id.* at 371–73, the Fourth Circuit proceeded to ask whether the FTC properly found that the board's actions "amounted to an unreasonable restraint of trade," *id.* at 373. Applying the rule of reason and the related "quick look doctrine," the court affirmed the FTC's factual finding of unreasonableness. *Id.* at 373–75.

We do not share the district court's concern that permitting the case to go forward at this stage will expose state regulatory board members to a lawsuit "every single time such an investigation commences." Nor do we suggest that every investigation suggests the existence of a conspiracy. But neither can we say that members of regulatory bodies who conspire against competition are automatically immune from antitrust allegations even when the body does not meet the requirements for state-action

immunity. The SmileDirect parties have sufficiently alleged anticompetitive concerted action for a § 1 claim.

### III. Dormant Commerce Clause Claim

We affirm the district court's dismissal of the SmileDirect parties' Dormant Commerce Clause claim. The Commerce Clause empowers Congress to "regulate Commerce. . . . among the several States." U.S. Const. art. I, § 8, cl. 3. "Courts have long read a negative implication into the clause, termed the 'dormant Commerce Clause,' that prohibits states from discriminating against interstate commerce." *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 731 F.3d 843, 846 (9th Cir. 2013). In other words, the Dormant Commerce Clause "prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988).

The SmileDirect parties have not pled a *per se* violation of the Dormant Commerce Clause, because the regulations governing the Board do not "facially discriminate against out-of-state interests." *Yakima Valley*, 731 F.3d at 846; *see* Cal. Bus. & Prof. Code §§ 1600–1621. Nor does the investigation itself establish a *per se* violation: the Complaint only alleges an investigation of *one* company's entirely in-state conduct.

The Complaint also falls short of pleading a Dormant Commerce Clause violation through the investigation's "'incidental' impacts on interstate trade." *Yakima Valley*, 731 F.3d at 846 (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979)). As the Supreme Court has stated: "Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce

are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id.* at 846 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). The Board has a legitimate interest in regulating and investigating California-licensed dentists, and the Board's conduct targeted only a handful of California stores and a SmileBus parked in California. *See Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976).

## IV. Equal Protection Claim

The SmileDirect parties allege that the Board Actors subjected them to disparate treatment in violation of the Equal Protection Clause of the Fourteenth Amendment. They claim that Sulitzer is like every other California-licensed dentist who can prescribe clear aligner therapy and who is subject to the Board's regulatory authority. But they say that the Board Actors have not subjected any other California dentists or dental corporations to similar investigations, and have singled out Sulitzer and the other SmileDirect parties on the basis of "economic protectionism and animus."

As the Supreme Court has recognized, "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). To plead a class-of-one equal protection claim, the SmileDirect parties must allege facts showing that they have been "[1] intentionally [2] treated differently from others similarly situated and that [3] there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

We have not had occasion to determine what degree of similarity makes a plaintiff "similarly situated" to others in the class-of-one context, and the Supreme Court has offered little guidance on that front.  In *Olech*, a homeowner alleged that the village demanded a 33-foot easement to connect her property to the municipal water line, but only required a 15-foot easement from other property owners in the same position. *Id.* at 565.  We have interpreted *Olech* to permit a class-of-one claim by a property owner alleging that a county arbitrarily denied her a permit for a road approach but allowed other property owners to build road approaches without incident. *Gerhart v. Lake County*, 637 F.3d 1013, 1022 (9th Cir. 2011).  Neither case required extended reflection on what made the plaintiffs "similarly situated" with the comparator class: same neighborhood block; same type of property; same city water line (*Olech*); same type of road approach (*Gerhart*)—but different treatment by government officials.

Our sister circuits, in defining what it means to be "similarly situated," have largely determined that a class-of-one plaintiff should be similar to the proposed comparator in all "relevant" or "material" respects.  For example, in assessing a claim by a land developer who alleged differential treatment, the Second Circuit explained that "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).  Likewise, the Seventh Circuit has held that class-of-one plaintiffs must be "directly comparable . . . in all material respects" to the comparator. *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010); *accord. PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1285 (11th Cir. 2021) ("The entities being compared *must be prima facie identical in all relevant*

*respects*." (internal quotation marks, alterations, and citation omitted)); *Superior Commc'ns v. City of Riverview*, 881 F.3d 432, 446 (6th Cir. 2018) (adopting the "all material respects" formulation); *Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 640 (1st Cir. 2013) ("[A] class-of-one plaintiff bears the burden of showing that his comparators are similarly situated in all respects relevant to the challenged government action.").

We join our sister circuits in holding that a class-of-one plaintiff must be similarly situated to the proposed comparator in all material respects. The SmileDirect parties fall far short of this showing. Rather than claiming that they stand on the same footing as others, they instead tout their uniqueness, hailing their platform as "revolutionary," "unique," "cutting-edge," and "more convenient and affordable" than traditional orthodontia models. Because they operate a materially different business model, at a significantly different price point, using new and different technology, the SmileDirect parties cannot establish that they are "similarly situated" to all other licensed dentists and orthodontists in California. The district court properly dismissed their equal protection claims without leave to amend because it was "clear that the complaint could not be saved by amendment." *Cooper v. Ramos*, 704 F.3d 772, 783 (9th Cir. 2012).

**AFFIRMED IN PART; REVERSED and REMANDED IN PART**.

The parties shall each pay their own costs on appeal.