Filed 11/27/24  Sparks v. Santa Monica Community College Dist. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| CARTER SPARKS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SANTA MONICA COMMUNITY COLLEGE DISTRICT et al.,<br><br>    Defendants and Respondents. | B335328<br><br>Los Angeles County<br>Super. Ct. No. 22SMCV00032 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa K. Sepe-Wiesenfeld, Judge.  Affirmed.

JW Howard/Attorneys, John W. Howard and Scott J. Street for Plaintiff and Appellant.

Carpenter, Rothans & Dumont, Louis R. Dumont and John J. Stumreiter for Defendants and Respondents.

_____

Carter Sparks sued to halt a vaccine mandate at Santa Monica College amid the COVID-19 pandemic.  Eventually the

college dropped the mandate. Then Sparks failed out of school. Sparks amended his lawsuit to vindicate his alleged damages from being denied a religious exemption to the now defunct mandate. On appeal, he pursues only his equal protection claim. Sparks failed to state a claim and failed to demonstrate any abuse of discretion in denying further amended pleadings. We affirm.

## I

Sparks sued the Santa Monica Community College District and its Health Services Officer Susan Fila in January 2022. We refer to the defendants collectively as the College.

## A

The lawsuit originally sought to end a vaccine policy the College adopted in August 2021 to slow the spread of COVID-19. As alleged, the College required students to get a COVID-19 vaccine to attend classes in person; otherwise, students could attend remotely only. The policy had a short-lived exemption for religious objections: Sparks does not dispute the College rescinded the exemption in early September 2021.

Sparks's lawsuit asserts he sought an exemption from the vaccine requirement based on religious and medical grounds, but on appeal, he mentions the latter in passing only. To his original complaint, Sparks attached a letter he claims is "the College's denial letter." Sparks acknowledges the letter is from an attorney yet maintains Fila ultimately made the decision to deny his exemption request.

Regarding Sparks's application for a religious exemption, the letter states the College denied Sparks's request because it was "based entirely on a letter from a medical doctor" that did not "articulate any facts that would justify a religious exemption" for

2

Sparks.  The letter addressed points raised by Sparks's lawyer concerning vaccine efficacy and side effects.  Then the letter stated:

"Carter's application for a religious exception did not articulate a sincerely held religious opposition to vaccination.  All the College knows about Carter's religion is that he is Catholic and went to Catholic school.  However, being Catholic does not entitle someone to a religious exemption from vaccination.  Unlike some religions (e.g., Dutch Reformed Congregations, Faith Tabernacle, etc.), the Catholic Church has no theological objection to vaccination.  Indeed, Pope Francis has urged people to get the COVID-19 vaccinations, stating that 'getting vaccinated is a simple yet profound way to care for one another, especially the most vulnerable.' (https://www.vaticannews.va/en/pope/news/2021-08/pope-francis-appeal-covid-19-vaccines-act-of-love.html).  Carter did not articulate personal religious beliefs contrary to those of his Church's leadership.

"As your letter makes clear, Carter's opposition to the vaccine is based on medical and scientific disagreements with the vaccine.  This is not a basis for an exemption from the College's vaccination requirement."

B

Sparks filed a first amended complaint that trailed his original complaint by a few months.  This one again attached the denial letter and asserted new causes of action.  Regarding federal constitutional claims, Sparks now had a substantive due process claim in addition to a First Amendment claim.

The College demurred to this amended pleading.  Both sides briefed the demurrer, which the court overruled, and Sparks obtained leave to amend again, more than a year after

3

filing his lawsuit.  By this time, the College had rescinded its vaccine policy, and Sparks had received discovery from the College.

C

Sparks filed his Second Amended Complaint in April 2023. We refer to this operative complaint as the Complaint.  Much of its facts section focuses on the COVID-19 pandemic, government and school responses, and the vaccines.  The Complaint asserts three claims:  (1) a claim for declaratory relief for violation of Sparks's right to privacy under the California Constitution, (2) an equal protection claim under title 42 United States Code section 1983 (section 1983), and (3) a state law discrimination claim under the Education and Government Codes.  The second claim is against Fila only.

The Complaint selectively quotes the denial letter.  It does not claim any part of the letter is pretext.  It purports to attach the letter, but this time the letter does not follow the complaint in our record.

Apart from the letter, and focusing on religion and Sparks's equal protection claim, the Complaint states:

- "Mr. Sparks is Catholic and attended Catholic school.  He has a sincere religious objection to injecting himself with the COVID-19 shot and requested an exemption on that ground."  He also "cited his belief that he has already contracted COVID-19 and thus has natural immunity to the virus and provided a letter from a doctor to support the request."
- The College denied his request.  Then it barred him from attending in-person classes during the 2021-2022 school year.

- The College's discovery responses showed the school received 140 requests for religious accommodations under its COVID-19 vaccine policy. "Mr. Sparks was similarly situated to the other students who sought a religious accommodation."
- "Defendants gave accommodations" to either 62 or 78 of these students—the Complaint says 78 at the beginning and 62 later on—"but they did not give one to Mr. Sparks. On information and belief, this decision to treat Mr. Sparks differently was made by Ms. Fila acting under color of law and in the scope of her authority at the College."
- "Ms. Fila intentionally treated Mr. Sparks differently than the 62 students who received religious accommodations."
- "There was no rational basis for this disparate treatment. If any unvaccinated students could attend class safely in person, then all unvaccinated students should have been allowed to attend class in person. Discriminating among religions when deciding who to give accommodations to violates the Equal Protection Clause of the Fourteenth Amendment."
- The College "discriminated against Mr. Sparks when it treated him differently than other people who requested religious and medical accommodations under the vaccine policy." The College thereby violated Mr. Sparks' right to equal protection under the law.
- The College also forced him "to choose between his education and his religious beliefs," and thereby "interfered with Mr. Sparks' free exercise of his religion."

The College demurred again. The parties briefed the demurrers, and the trial court ordered supplemental briefing to

5

address mootness and ripeness. Sparks's supplemental brief noted he had dropped out of school.

Sparks's trial court briefing conceded "[t]his is primarily a declaratory relief case." On appeal, Sparks recognizes his claims for declaratory and injunctive relief are moot, so we do not address these claims further.

The hearing took place in November 2023. Sparks did not include a transcript of this hearing in our record.

The court's order shows Sparks submitted on the court's tentative ruling as to the first and third causes of actions being moot. On the second claim, the court ruled Sparks had "failed to state an equal protection claim based on his Catholic beliefs or under a 'class of one' theory" of discrimination where no suspect classification is involved. The court sustained the demurrers without leave to amend and later entered judgment against Sparks.

## II

Sparks challenges the order sustaining the demurrers but, on appeal, addresses only his second cause of action: his federal equal protection claim, which is against Fila only. On this claim, the trial court did not err. Sparks forfeited any challenge to the dismissal of his other claims.

Typically, we independently review a ruling sustaining a demurrer without leave to amend, and we discern whether the complaint states facts sufficient to constitute a cause of action. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).) Some of our courts apply the federal standard for motions to dismiss when assessing claims under section 1983. (E.g., *Martinez v. City of Clovis* (2023) 90 Cal.App.5th 193, 253–254; but see *Blank*, *supra*, 39 Cal.3d at pp. 318–319 [no discussion of federal pleading

6

standard in connection with section 1983 claim]; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126, 1147–1150 [same].) Applying the federal standard does not meaningfully change our job, as "[t]he basic principles of federal law for pleading a cause of action are similar to California's." (*Martinez, supra*, 90 Cal.App.5th at p. 254; see also *ibid.* [a complaint meets federal standards if it contains sufficient factual matter to state a plausible claim to relief].)

Under both standards, we liberally construe the complaint, accepting as true material facts properly pleaded, but not conclusions of fact or law. (See *Blank, supra*, 39 Cal.3d. at p. 318; *McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1173 (*McBride*); *Sprewell v. Golden State Warriors* (9th Cir. 2001) 266 F.3d 979, 988 (*Sprewell*).) We disregard allegations contradicted by documents attached to the complaint or referenced therein. (See *McBride, supra*, 18 Cal.App.5th at p. 1173; *Johnson v. Federal Home Loan Mortgage Corp.* (9th Cir. 2015) 793 F.3d 1005, 1008 (*per curiam*).)

In both federal and California courts, plaintiffs may plead themselves out of court, including through attached exhibits. That is, they may include facts showing they have no claim. (See *Sprewell, supra*, 266 F.3d at pp. 988–989; *Sarale v. Pacific Gas & Electric Co.* (2010) 189 Cal.App.4th 225, 245–246.)

As we explain, the Complaint inadequately states an equal protection violation under both pleading standards. We address traditional equal protection law first and then the alternative equal protection theory Sparks actually pleaded. Sparks maintains his complaint asserts both theories.

A

To state a claim under section 1983, plaintiffs must assert a person acting under color of state law violated a constitutional right. (*Ochoa v. Public Consulting Group, Inc.* (9th Cir. 2022) 48 F.4th 1102, 1107.) Sparks grounds his section 1983 claim in the Fourteenth Amendment's Equal Protection Clause.

This clause requires those "who are similarly situated with respect to the legitimate purpose of a law . . . be treated alike under the law." (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 857 (*Las Lomas*).) "Equal protection challenges typically involve claims of discrimination against an identifiable class or group of persons." (*Ibid.*) "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." (*Barren v. Harrington* (9th Cir. 1998) 152 F.3d 1193, 1194.)

Sparks's Complaint asserts the College treated him—a Catholic—differently than other students who sought religious accommodation under the College's vaccine policy by not granting him an exemption. But contrary to Sparks's arguments, his complaint does not allege discrimination against Catholics *as a group*. And Sparks does not otherwise allege he was discriminated against as part of some protected class.

Nor could he. The denial letter quoted in the Complaint did not say or imply that Catholics were ineligible for a religious exemption. To the contrary, the College recognized that, even though the Pope encouraged COVID-19 vaccinations, Sparks

could "articulate personal religious beliefs contrary to those of his Church's leadership" but had failed to do so.

The letter shows the College denied Sparks's religious exemption request because he "did not articulate a sincerely held religious opposition to vaccination." Sparks merely stated he is Catholic and went to Catholic school. He presented no basis for a religious exemption. The letter shows the College was not challenging the *verity* of any *religious* belief, as Sparks maintains on appeal.

The letter also shows this case involves no interference with any fundamental right. Ensuring those seeking a religious accommodation possess a sincerely held religious belief is not interfering with religion. This measure accommodates religion. (E.g., *Callahan v. Woods* (9th Cir. 1981) 658 F.2d 679, 683 [to merit protection under the First Amendment's free exercise clause, a "claimant's proffered belief must be sincerely held"; the required inquiry addresses "the sincerity with which the claimant holds the allegedly religious belief itself"].) Sparks does not dispute this. Nor does he claim the rationale for the College's decision stated in the denial letter was a pretext.

The Complaint also asserts the College interfered with Sparks's free exercise of his religion by "forcing him to choose between his education and his religious beliefs . . . ." The letter refutes this allegation: it notes Sparks was enrolled in an online course and could continue attending remotely without proof of vaccination. Sparks does not dispute this.

This case does not resemble the unpublished cases Sparks claims are analogous, which involve prisoners of particular faiths who were denied accommodations they needed to practice their faiths in prison. (See *Gates v. LeGrand* (D.Nev., Mar. 12, 2019,

9

No. 316CV00321MMDCBC) 2019 WL 1168527, at *1, 3, 9 [incense]; *Pompilius v. Nevada* (D.Nev., June 8, 2020, No. 218CV01801APGVCF) 2020 WL 3050709, at *3–4 [recognition of religious holidays].)

Sparks suggests he warrants more lenient treatment because he is a member of a politically unpopular group—unvaccinated persons. But the exemption decision he challenges did not draw lines on this basis, as the College granted exemptions to unvaccinated students other than Sparks. Moreover, "unvaccinated people do not constitute a suspect class." (*McArthur v. Brabrand* (E.D.Va. 2022) 610 F.Supp.3d 822, 839 (*McArthur*) [listing supporting cases]; see also *Williams v. Brown* (D.Or. 2021) 567 F.Supp.3d 1213, 1228 ["courts have routinely rejected the argument that vaccine mandates will trigger heightened scrutiny under the Equal Protection Clause"].)

Sparks's lawsuit does not involve a suspect classification, or any identifiable group-based classification. There is no traditional equal protection claim at issue.

B

Sparks's claim thus comes down to a "class of one" claim. This is the theory the Complaint attempts to plead. The pleading fails federal and California standards.

"When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim." (*N. Pacifica LLC v. City of Pacifica* (9th Cir. 2008) 526 F.3d 478, 486.) The United States Supreme Court first recognized this type of equal protection claim in *Village of Willowbrook v. Olech* (2000) 528 U.S. 562, 564 (*Olech*). (See *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2017) 3 Cal.5th 1118, 1142 (*Gerawan*)

10

[summarizing *Olech*]; see also *Engquist v. Oregon Dept. of Agriculture* (2008) 553 U.S. 591, 601 ["we recognized in *Olech* that an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one' "].)

A class of one claim requires showing (1) the plaintiff was treated differently from others similarly situated, (2) the different treatment was intentional, and (3) there was no rational basis for it. (*Gerawan*, *supra*, 3 Cal.5th at p. 1144; *Las Lomas*, *supra*, 177 Cal.App.4th at p. 858.)

Sparks's Complaint says he was one of 140 students who sought a religious exemption from the College's vaccine policy; the College gave 62 accommodations; but it denied his request. It then provides conclusory allegations tracking the elements of a class of one claim. This is insufficient to survive a pleadings challenge. (See *McBride*, *supra*, 18 Cal.App.5th at p. 1173 [courts must disregard a complaint's conclusions in ruling on demurrers]; Martin A. Schwartz, *Schwartz on Section 1983: Law and Commentary* (PLI 2023) § 11:4 at p. 11-15 ["large numbers of Section 1983 'class-of-one' equal protection claims are dismissed at the pleadings stage because [ ] the complaint does not contain non-conclusory allegations of similarly situated comparators; or . . . [the complaint] pleads out of court by setting forth allegations showing a rational basis for the alleged discrimination"].)

Regarding the first element, the Complaint states Sparks "was similarly situated to the other students who sought a religious accommodation." It offers no facts to support this conclusion. The denial letter shows the College denied Sparks's exemption request after an individualized look at the reasons for

11

his request and the sincerity of any professed religious belief opposing vaccination.  Nothing beyond a conclusory allegation signals other applicants for a religious exemption were similarly situated to Sparks, and the letter suggests the opposite.  This is particularly problematic given the level of similarity between the plaintiff and the comparators for a class of one claim must be "extremely high."  (*Squires v. City of Eureka* (2014) 231 Cal.App.4th 577, 594–595; see also *SmileDirectClub, LLC v. Tippins* (9th Cir. 2022) 31 F.4th 1110, 1123 [a "class-of-one plaintiff must be similarly situated to the proposed comparator in all material respects"].)

Sparks notes he included the following supporting allegation in his complaint:  "If any unvaccinated students could attend class safely in person, then all unvaccinated students should have been allowed to attend class in person."  This attack goes to the wisdom of the challenged government action—here, adopting a vaccine policy with an exemption—which is beyond the bounds of an equal protection claim involving rational basis review.  (See *Las Lomas, supra*, 177 Cal.App.4th at p. 858; see also *State Route 4 Bypass Authority v. Super. Ct.* (2007) 153 Cal.App.4th 1546, 1565 ["the equal protection clause is not a rule of thumb for determining the relative fairness and wisdom of different public policy choices.  It is a safeguard against wholly irrational policies that do not advance a legitimate state interest or that single out an unpopular group for discriminatory treatment"].)

Against the backdrop of the denial letter, Sparks's allegations about the COVID-19 vaccine and the College's vaccine policy do not provide a factual basis for concluding the decision to bar Sparks, but not other unvaccinated students, from campus in

12

the fall of 2021 was "wholly irrational." (See *Las Lomas*, *supra*, 177 Cal.App.4th at p. 860; see also *id.* at pp. 842 & 858 [courts must reject an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the difference in treatment; sustaining demurrer on plaintiff's equal protection claim was proper].)

The factually distinct cases Sparks cites in his discussion of class of one claims do not salvage his deficient pleading. Nor do his efforts to fault the trial court's reasoning, as we independently decide his allegations are insufficient to constitute a cause of action.

### III

Denying leave to amend was not an abuse of discretion.

There is no sign Sparks sought this leave at the trial court. His opposition and supplemental brief did not request this relief, and Sparks elected to proceed without a reporter's transcript of the hearing. Perhaps Sparks sought to avoid forfeiture. (See *Las Lomas*, *supra*, 177 Cal.App.4th at pp. 846 & 861 [counsel confirmed at the demurrer hearing that plaintiff was not seeking leave to amend and thereby forfeited its claim of error based on the denial of leave].)

Assuming this was not his aim, a plaintiff like Sparks who argues he should get to amend must demonstrate it is reasonably possible he can cure the complaint's defects and must specify how he would amend the complaint to state a cause of action. (*Blank*, *supra*, 39 Cal.3d at p. 318; *Rakestraw v. Cal. Physicians' Service* (2000) 81 Cal.App.4th 39, 43–44.)

Sparks did not carry this burden. His argument is minimal and does not identify how, consistent with his pleading obligations, he could amend his complaint to state any claim. (Cf.

13

*McGarvey v. Pacific Gas & Electric Co.* (1971) 18 Cal.App.3d 555, 561, fn. 3 [pleadings should be truthful]; see also *Brown v. Smith* (2018) 24 Cal.App.5th 1135, 1148 [sustaining demurrer without leave to amend was proper where plaintiffs did not explain how they could amend the complaint to cure its defects].)

Sparks's reply brief asks us to permit him to assert other constitutional claims against the College, including a claim he dropped from his first amended complaint (substantive due process). He cites recent federal cases that concern vaccine mandates, but he does not discuss the facts or claims of those cases. Nor does he demonstrate how he could successfully state any new cause of action in light of the facts of his case.

## DISPOSITION

We affirm the judgment and order sustaining the demurrers without leave to amend and award costs to the respondents.


WILEY, J.


We concur:


STRATTON, P. J.


VIRAMONTES, J.


14